967 F.2d 377
 Dan M. SANDOVAL, Plaintiff-Appellant,
v.
AETNA LIFE AND CASUALTY INSURANCE CO. and Metropolitan Life
Insurance Co., Defendants,
and
Atlantic Richfield Co.; Arco Coal Co.; and Thomas L.
Jacobs & Associates, Inc., Defendants-Appellees.
 No. 90-2217.
 United States Court of Appeals,
Tenth Circuit.
 June 16, 1992.
 
 Jere C. Corlett (James E. Thomson and Judith C. Zelazny with him on the brief), Santa Fe, N.M., for plaintiff-appellant.
 David L. Bacon of Adams, Duque & Hazeltine, Los Angeles, Cal., (Cameron Peters of Kemp, Smith, Duncan & Hammond, P.C., Santa Fe, N.M., with him on the brief), for defendants-appellees.
 Before MOORE, ANDERSON, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 In this appeal, we review a district court's conclusion that an ERISA plan administrator's decision to terminate the appellant's disability payments was not arbitrary and capricious. Our review requires that we confront three issues: (1) whether the district court could consider evidence not before the ERISA plan administrator; (2) whether the appellant received a "full and fair" hearing pursuant to 29 U.S.C. § 1133; and (3) whether the administrator's decision was unsupported by substantial evidence and therefore arbitrary and capricious. Because we conclude that the district court decided these issues correctly, we affirm.
 
 I. Background
 
 2
 Dan M. Sandoval, the plaintiff-appellant, worked as a computer operator for defendant-appellee Arco Coal Company ("Arco"), a wholly owned subsidiary of defendant-appellee Atlantic Richfield Company. Sandoval's employment with Arco began in 1964.
 
 
 3
 Sandoval was covered by an employee benefit plan ("the plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The plan included benefits for long-term disability.[1] Thomas L. Jacobs & Associates ("Jacobs") was the designated administrator of the plan. As administrator, Jacobs was a fiduciary with discretionary authority to determine entitlement to benefits and to review denials of claims. Under the terms of the contract between Jacobs and Arco, Jacobs received flat fees for processing claims and thus had no direct financial incentive to deny or to terminate benefits to plan participants.
 
 
 4
 In 1977, Sandoval became disabled and entitled to long-term benefits under the terms of the plan. Sandoval's disability arose "on the basis of physical impairments which included a chronic cervical strain, an ulnar neuropathy in the area of plaintiff's right wrist, and a minor carpal tunnel syndrome of the left wrist." District Court's Findings of Fact and Conclusions of Law, R., Vol. I, Doc. 100, at 2. Upon Sandoval's eligibility for benefits, Arco classified him as an "inactive employee," and he began receiving disability benefits under the terms of the plan. Sandoval also applied for and was granted total disability Social Security benefits.
 
 
 5
 In 1988, as part of the routine review of claims permitted by the plan agreement, Jacobs reviewed Sandoval's claim, requested additional information from him, and scheduled an independent medical evaluation. Dr. Moon, Sandoval's personal physician, submitted a supplemental medical evaluation in which he opined that Sandoval continued to be fully disabled due to his physical impairments. However, Dr. Walsky, the doctor who conducted the independent evaluation, concluded that Sandoval could "return to gainful employment" if he did not engage in any "heavy lifting with [his] right arm." Addendum to Defendants-Appellees' Answer Br., Defs.' Ex. H, at 3. Dr. Walsky concluded that Sandoval's impairments were relatively mild and not disabling:
 
 
 6
 Cerebellar exam reveals no ataxia, dysmetria, nor incoordination. On motor exam, he shows no atrophy even in the right intrinsic hand muscles. However, there is mild weakness against active resistance in the intrinsic muscles of the right hand, particularly the abductors of the fingers. Normal strength is noted in the lower extremities and the left upper extremity. On sensory examination, there is hypesthesia to pin and touch in the ulnar side of the right hand, affecting half the ring finger, and the little finger as well. The rest of the sensory examination is unremarkable, including vibration sense in the fingertips and toes....
 
 
 7
 The neck range of motion is mildly restricted to lateral flexion, attempting to turn the ear toward the shoulders, and is relatively normal for rotation of the chin toward the shoulders.... A very mild Tinel sign is present in both wrists, with only an occasional tap causing paresthesias in the forearms, not the hands.
 
 
 8
 Id. at 2-3. He specifically disagreed with Dr. Moon's previous diagnosis of "a C-8 and D-1 radiculopathy," stating that it was "not substantiated by the examination and x-rays that [he] reviewed." Id. at 3. Dr. Walsky recommended that Sandoval receive counseling, vocational rehabilitation, and exercise therapy, and noted that Sandoval "obviously d[id] not ever intend to be involved in gainful employment." Id. at 4. Based on this information, a Jacobs employee determined that Sandoval was no longer totally disabled under the plan's definition. Jacobs therefore terminated Sandoval's benefits.
 
 
 9
 Jacobs advised Sandoval of its decision that he was no longer totally disabled and of his right to request review of the decision. Sandoval then hired an attorney and requested review, at which point Jacobs invited him to submit any additional relevant information. Neither Sandoval nor his attorney informed Jacobs' Benefit Review Committee ("the Review Committee") of the possibility that Sandoval might suffer from any psychological impairment. As a result, the Review Committee was unaware of and did not consider disability based on psychological impairment.[2] The Review Committee upheld the decision to terminate Sandoval's benefits.
 
 
 10
 After Sandoval's disability benefits were cancelled, Arco terminated his employment. Under the terms of the benefit plan, Sandoval then lost his eligibility for any future benefits.
 
 
 11
 Sandoval brought suit in New Mexico state court. Several months after the suit was filed, Sandoval had a psychological evaluation for the first time. The clinical psychologist who performed the examination diagnosed him as suffering from depression and memory loss and opined that Sandoval was totally disabled by reason of his psychological impairments together with his physical impairments.
 
 
 12
 Because the action arose under ERISA, the defendants removed the action on the basis of federal question jurisdiction to the United States District Court for the District of New Mexico. After a bench trial, the district court found that Sandoval was totally disabled because of his psychological impairments or a combination of physical and psychological impairments. However, because Sandoval had not submitted evidence of psychological disability to Jacobs, the district court concluded that Jacobs' actions were not arbitrary and capricious. The court therefore entered judgment in favor of the defendants.
 
 
 13
 Sandoval filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.
 
 II. Standard of Review
 
 14
 Although not styled as such, Sandoval's complaint arises under 29 U.S.C. § 1132(a)(1)(B).[3] The district court found, and the parties do not dispute, that Jacobs had discretionary authority to determine eligibility for benefits. Because the plan gave the administrator this discretion, the district court reviewed Jacobs' actions under an arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-11, 109 S.Ct. 948, 953-54, 103 L.Ed.2d 80 (1989) (in action brought under section 1132(a)(1)(B), discretionary actions of fiduciary reviewed under arbitrary and capricious standard); Woolsey v. Marion Lab., Inc., 934 F.2d 1452, 1457 (10th Cir.1991); Pratt v. Petroleum Prod. Management Inc. Employee Sav. Plan & Trust, 920 F.2d 651, 657-58 (10th Cir.1990).[4]
 
 
 15
 The district court's holding that the administrator's decision was not arbitrary and capricious is a legal conclusion. Hence, our review of the district court's decision, although not the underlying administrator's decision, is plenary. See Pratt, 920 F.2d at 658; cf. Phillips v. Alaska Hotel & Restaurant Employees Pension Fund, 944 F.2d 509, 515 (9th Cir.1991) (district court's decision whether trustees acted arbitrarily or capriciously is mixed question of law and fact, reviewed de novo), cert. denied, --- U.S. ----, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992).
 
 III. Scope of District Court's Review
 
 16
 Although the district court concluded that Sandoval was psychologically disabled at the time Jacobs terminated his benefits, the court also found that the Review Committee was unaware of this disability because Sandoval failed to bring it to the Review Committee's attention. In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision. See Perry v. Simplicity Engineering, 900 F.2d 963, 967 (6th Cir.1990); Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir.1988) ("[T]he court must consider only the record before the plan administrator at the time it reached its decision. [Courts should not consider or rely] upon evidence not part of the administrative record. [Nor should courts] consider arguments that do not appear in the administrative record.") (citations omitted); Danti v. Lewis, 312 F.2d 345, 349-50 (D.C.Cir.1962) (court should consider only evidence and arguments before trustee). As the Sixth Circuit stated in Perry:
 
 
 17
 A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.
 
 
 18
 Perry, 900 F.2d at 967 (citation omitted).
 
 
 19
 The Review Committee had before it recent medical reports from Doctors Moon and Walsky, as well as Sandoval's complete medical file, which included some indications from past examinations that Sandoval was not disabled. The medical reports discussed only his physical impairments; the only references to psychological evaluations occurred in the context of occupational therapy. The reports do not suggest that Sandoval might be disabled due to psychological impairments, nor did Sandoval's attorney, when he requested review of the initial decision to terminate benefits, suggest or make a claim for psychological disability. In accordance with ERISA, Sandoval was invited to submit any additional relevant evidence to the Review Committee for purposes of its review, yet Sandoval's attorney failed to submit any new evidence.
 
 
 20
 An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it. Cf. LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir.1984) (trustees under no duty to seek out evidence contradicting evidence before them). The evidence of psychological disability developed long after the review process does not render Jacobs' decision arbitrary or capricious.
 
 
 21
 Nonetheless, Sandoval argues that the district court's subsequent finding that he was psychologically disabled requires a "remand" to the plan administrator for a new determination of disability. In support of this argument, Sandoval cites Wardle v. Central States, Southeast & Southwest Areas Pension Fund, 627 F.2d 820 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). In Wardle, the Seventh Circuit stated:
 
 
 22
 A federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a de novo factual hearing on the question of the applicant's eligibility. As a general matter a court should not resolve the eligibility question on the basis of evidence never presented to a pension fund's trustees but should remand to the trustees for a new determination.
 
 
 23
 Id. at 824 (citations omitted). Although we agree with the Seventh Circuit's first sentence, we respectfully disagree with the second.[5] If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence. Sandoval is not entitled to a second chance to prove his disability. The district court's responsibility lay in determining whether the administrator's actions were arbitrary or capricious, not in determining whether Sandoval was, in the district court's view, entitled to disability benefits. In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision. See Perry, 900 F.2d at 967; Voliva, 858 F.2d at 196. The district court's subsequent finding based upon later-developed evidence that Sandoval was psychologically disabled was irrelevant to this inquiry and therefore exceeded the scope of the court's review.
 
 
 24
 IV. A "Full and Fair Review"
 
 
 25
 ERISA provides that a plan must follow certain procedural steps when denying or terminating benefits to a plan participant. First, the plan must provide the participant with written notice of the denial which sets forth the specific reasons underlying the decision. 29 U.S.C. § 1133(1). Second, the plan must "afford a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Id. § 1133(2). Labor regulations specify that the review procedure must permit the claimant to "(i) [r]equest a review upon written application to the plan; (ii) [r]eview pertinent documents; and (iii) [s]ubmit issues and comments in writing." 29 C.F.R. § 2560.503-1(g)(1).
 
 
 26
 Sandoval argues that he failed to receive a "full and fair review" of the decision to terminate his benefits, pursuant to 29 U.S.C. § 1133(2). We have previously held that receiving a "full and fair review" requires " 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.' " Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 893-94 (10th Cir.1988) (quoting Grossmuller v. International Union, United Auto. Aerospace & Agric. Implement Workers, Local 813, 715 F.2d 853, 858 n. 5 (3d Cir.1983)).
 
 
 27
 Sandoval was represented by counsel throughout the review process. Sandoval was told of Dr. Walsky's medical diagnosis. Furthermore, the Review Committee invited Sandoval to submit additional evidence. Sandoval's counsel knew that the initial review by a Jacobs employee had resulted in a determination to reject total disability. Sandoval had the opportunity to submit additional evidence of physical or other disability to the Review Committee but declined to do so. The Review Committee noted explicitly the conflicting medical opinions and found Dr. Walsky's to be more detailed, less conclusory, and more convincing. The Review Committee had no affirmative duty to rule out a claim not before it. In short, Jacobs complied with the statutory requirements of section 1133.
 
 
 28
 Given that Jacobs complied with the statutory and regulatory requirements, Sandoval cannot complain that the procedures followed were unfair. Congress intended these review procedures "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980). Absent such safeguards, mounting costs of administering a plan might discourage employers from establishing such plans. Cf. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987) (civil enforcement scheme of 29 U.S.C. § 1132 "represents a careful balancing of the need for prompt and fair claims settlement procedure against the public interest in encouraging the formation of employee benefit plans."). Based upon our review of the record, Sandoval received a full and fair review.
 
 V. Support by Substantial Evidence
 
 29
 Finally, we must consider whether Jacobs' determination that Sandoval was not disabled was arbitrary and capricious because it was unsupported by substantial evidence. " 'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.' " Flint v. Sullivan, 951 F.2d 264, 266 (10th Cir.1991) (citations omitted).
 
 
 30
 The evidence considered by Jacobs consisted primarily of the two doctors' reports that reached contrary conclusions as to whether Sandoval was totally disabled. A member of the Review Committee testified that Dr. Walsky's report was more detailed, that it contained more objective medical findings, and that his conclusions made more sense based on the medical evidence. On this record, we must conclude that substantial evidence supported Jacobs' determination.
 
 
 31
 Accordingly, we AFFIRM the district court's judgment.
 
 
 
 [1]
 The plan defined disability as "the inability to engage in any gainful occupation for which you are reasonably fitted by education, training or experience as determined by the insurance carrier on the basis of a completed claim form. The insurance carrier has the right to request additional medical evidence of disability as often as may reasonably be required to support the claim for [long-term disability] benefits." Addendum to Defendants-Appellees' Answer Br., Defs.' Ex. B, at 3. Elsewhere, the plan defined disability as "the inability to engage in any gainful occupation for which you could reasonably become qualified." Id. at 9
 
 
 [2]
 The record in this case contains an occasional reference to the possibility that Sandoval might benefit from an examination by an occupational psychologist or other occupational therapy. However, there is no indication in the record prior to the termination of his benefits that he was suffering from any serious psychological impairment, nor did Sandoval ever claim disability, in whole or in part, on the basis of psychological impairment. Dr. Walsky, for example, merely concluded that Sandoval might benefit from "counseling because of his long-established idea that he is disabled." Addendum to Defendants-Appellees' Answer Br., Defs.' Ex. H, at 4. Sandoval's emotional state is not an unexpected consequence of his many years of inactivity. Thus, the record supports the district court's finding that the Review Committee was unaware of psychological disability at the time it reviewed the denial of benefits
 
 
 [3]
 29 U.S.C. § 1132(a)(1)(B) provides:
 A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
 
 
 [4]
 One commentator has noted that the various circuits refer to the standard in slightly different ways:
 The First, Third, Fourth, Fifth, and Eleventh Circuits predominantly quote the rule as merely arbitrary and capricious. The Second, Sixth, Seventh, and District of Columbia Circuits also commonly cite the rule this way. The other circuits, however, sometimes add other items, which they may or may not deem equivalent to arbitrary and capricious.
 George Lee Flint, Jr., ERISA: The Arbitrary and Capricious Rule Under Siege, 39 Cath.U.L.Rev. 133, 147-48 (1989) (footnote omitted). This Circuit has phrased the precise standard of review in several ways. See, e.g., Woolsey, 934 F.2d at 1456-57 (administrator's decision upheld unless "arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law"); Naugle v. O'Connell, 833 F.2d 1391, 1393-94 (10th Cir.1987) (trustee's decision reviewed under arbitrary and capricious standard; "[a] decision is neither arbitrary nor capricious if it is based on substantial evidence and is not the result of a mistake of law"). The Supreme Court refers to the district court's review as simply "the arbitrary and capricious standard." Bruch, 101 U.S. at 109, 109 S.Ct. at 953. In our view, both lack of substantial evidence and a mistake of law would be indicia of arbitrary and capricious actions and thus may be subsumed under the arbitrary and capricious label. See Danti v. Lewis, 312 F.2d 345, 348 (D.C.Cir.1962). Other potential indicia of arbitrary and capricious actions include bad faith or conflict of interest by the fiduciary. See, e.g., Bruch, 489 U.S. at 115, 109 S.Ct. at 956. Thus, in describing the standard of review as simply arbitrary and capricious, we intend no departure from our prior case law.
 
 
 [5]
 In Wardle, the court affirmed the district court's decision to uphold the trustees' denial of pension benefits. Wardle, 627 F.2d at 823, 830. Therefore, the court's statement regarding a remand to the trustees was merely dicta