Norma Kay JOHNSON, Plaintiff,

v.

DAYCO PRODUCTS, INC., Defendant.

No. 95–2460–RCN.

United States District Court,
D. Kansas.

March 18, 1997.

Thomas E. Hayes, Spigarelli, McLane & Short, Pittsburg, KS, Daniel R. Ray, Hershewe & Gulick, P.C., Joplin, MO, for plaintiff.

John I. O'Connor, Pittsburg, KS, for defendant.

## MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

This is an action for violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq., brought by the plaintiff against her former employer, for benefits under the employer's long-term disability plan. Plaintiff claims that although the employer initially paid benefits, they were wrongfully terminated contrary to the provisions of the plan. Plaintiff asserts claims under 29 U.S.C. § 1132(a)(1)(B) to recover the claimed benefits and to otherwise enforce rights afforded to her under the plan. The action was properly removed from the District Court of Bourbon County, Kansas, under 28 U.S.C. § 1441. The court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Venue is properly in this court under 29 U.S.C. § 1132(e)(2).

Certain disputes also arose late in the discovery period concerning the production of and the admissibility of a plan document by the defendant employer, Dayco Products, Inc. The defendant has offered for admission into evidence Exhibit 400, one of the files of North American Administrators, which purportedly contains the current plan of Dayco. The plaintiff has objected to the exhibit and moved to strike it on the grounds that it was only recently produced and does not reflect the plan involved in this case. A review of the exhibit reveals that the Dayco Flex-Choice Long Term Disability Plan Enrollment Guide, the Dayco 1986 long term disability plan, and the Mark IV Industries Flexible Benefit Plan Specifications are all included within the exhibit. The defendant offers no evidence by any witness who could identify the effective plan. The court overrules the objection and admits the exhibit for such value as it may have in determining the merits of this action. It is thus admitted as the file of NAA.

The defendant has offered the testimony of Christine Werth, the human resources manager of Mark IV, the parent corporation of Dayco. The plaintiff objects to the testimony of Ms. Werth and moves that it be stricken on the grounds that she had no knowledge concerning the processing of the plaintiff's claims and thus lacks the necessary foundation to offer testimony herein. The objection is overruled and the testimony is received for such value as it may have.

Defendant has filed a motion for protective order as to the notice to take the deposition of Ms. Werth. Defendant, itself, offered the deposition testimony of Ms. Werth during the trial of the action. The motion is, therefore, overruled as moot.

The court has heard and reviewed the evidence in the matter and is now prepared to rule on all outstanding issues. This Memorandum and Order shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff was an employee of Dayco Products, Inc. at its plant in Ft. Scott, Kansas, commencing October 4, 1987. She worked as a receptionist for nine months and then moved to the position of Administrative Assistant. Her responsibilities included typing for the human resources manager, preparing reports, setting up for meetings, carrying trays up and down stairs, moving tables, setting up food and clean up afterward.

Dayco provided insurance benefits to its employees including short-term and long-term disability plans. Prior to January 1, 1993, all employees were automatically enrolled in the long-term disability plan and Dayco paid the premium. As of January 1, 1993, each employee was required to affirmatively choose to enroll in the long-term disability plan known as the "FlexChoice Long-Term Disability Plan" with the employee paying the premium. Employees were allowed to elect from three benefit options. The employees were furnished summary descriptions of the benefit options in the form of an Enrollment Guide. The plaintiff selected the "Best" benefit option which pays 60% of the employee's monthly salary, less amounts received by the employee from Social Security, worker's compensation or any other disability or retirement source. During the first two years, the employee is entitled to benefits if unable to reasonably perform the responsibilities of the employee's occupation. After two years, benefits are payable if the employee is unable to reasonably perform the responsibilities of any occupation for which the employee is suited based on training, education and experience. This option does not require the employee to satisfy social security criteria to be applicable.

Plaintiff was injured in an automobile accident on March 23, 1993. At that time, the plaintiff was 49 years old. She has a high school education. Plaintiff applied for and received short-term disability benefits for the six month period, commencing March 24, 1993, through September 1993. Medical evidence was required each month to support the disability payments.

Plaintiff then applied for long-term disability benefits. The application, executed on September 17, 1993, included an Attending Physician's Statement. On this portion of the application, the plaintiff's physician, Dr. Paul Arnold, a neurosurgeon, stated that the plaintiff was not disabled, but that the plaintiff was incapable of performing certain of her duties including standing and sitting for long periods and lifting. In response to the question as to when trial employment could commence, Dr. Arnold responded "not clear yet." He also indicated that he did not expect a fundamental or marked change in the future. Other medical evidence submitted by the plaintiff evidenced that she was disabled and unable to work, including notes and correspondence from three physicians, Dr. Kevin Komes, a specialist in physical medicine and rehabilitation, Dr. M. Ellen Nichols, a neurosurgeon, and Dr. David Parris, a family practitioner. Only Dr. Komes had released the plaintiff to return to work on a half-time basis, effective July 19, 1993. However, on July 23, 1993, Dr. Parris had again taken plaintiff off work.

Effective January 1994, North American Administrators (NAA) was employed by Dayco to administer Dayco's long-term disability plan. The plaintiffs claim for long-term disability benefits was pending at that time without a determination having been made. All NAA claims, including the claim of the plaintiff, were reviewed in the first instance by a disability analyst. In this case, Susan Skubis was responsible for the Dayco account. Ms. Skubis has a high school education and no formal medical training. Her only medical training came from an in-house course conducted in October 1994, by a manager of the company who also had had no formal medical training. The claims were thereafter reviewed by Ms. Skubis' supervisor, Kathy Batt, who in turn would have had them reviewed by her manager, Gina Wilkie, a nurse, who would have made the final decision to grant, deny or terminate benefits. The same process was used for any appeal.

The file furnished to NAA included the application for disability benefits, a job description, a medical authorization signed by the plaintiff, transmittal correspondence concerning the claim, benefit confirmation, and notes on prescription pads from physicians excusing plaintiff from work and setting out certain restrictions on her activities. Includ-

ed within the physician notes was Dr. Komes' note stating that the plaintiff could return to work half days on July 19, 1993, and the note of Dr. Parris dated July 23, 1993, again taking the plaintiff off work. The file also contained a typewritten note of Dr. Arnold dated August 10, 1993, describing his physical examination of the plaintiff. NAA contacted Dr. Komes in January 1994, by telephone, requesting his records. He apparently gave NAA an oral opinion, over the telephone, that he did not believe plaintiff was disabled, notwithstanding that he had not seen her since July 1993. NAA also contacted Dr. Arnold requesting a copy of his medical records, reflecting that the plaintiff was disabled in September of 1993 and thereafter.

NAA did not request a copy of the medical records of Dr. Parris, the plaintiff's treating physician, although it knew of his treatment of plaintiff for the condition giving rise to her claimed disability, because he was a family practitioner and was not considered a specialist. NAA elected to get information only from "specialists." NAA did not request a copy of the medical records of Dr. Nichols. The Attending Physician Reports of Dr. Nichols dated April 26, 1993, and May 26, 1993, noted cervical and lumbar radiculopathy and that plaintiff's disability was from March 23, 1993, to a yet undetermined date.

On June 23, 1993, Dr. Komes found plaintiff disabled but estimated that she could return to work on July 15, 1993. By the time plaintiff was seen by Dr. Arnold on August 10, 1993, she had had some physical therapy and epidural steroid injections, none of which had relieved her pain. Dr. Arnold found decreased sensation in the L–5 distribution on the right side as well as a weak extensor halluces longus muscle. He noted that the MRI showed a herniated disc at L–4–5. On November 2, 1993, he reported that the plaintiff had been given a back brace and recommended that she return to physical therapy. He reported that the patient was to return for another MRI in February.

Because of the conflict in Dr. Komes and Dr. Arnold's opinions, NAA determined that an independent medical examination was required and the plaintiff was requested to submit to an examination by Dr. Adolph R. Mueller, an orthopedic surgeon in Joplin, Missouri. Dr. Mueller issued a report of his examination under date of February 8, 1994, finding that the plaintiff was then disabled. Dr. Mueller stated that plaintiff needed "further physical therapy which should be vigorously performed" and that she needed to be "weaned from the brace." He further stated

I would estimate her further length of disability to be 2 months. I feel that she should be able to return to work at that time with unlimited duties.

Specifically, Dr. Mueller found that plaintiff had spurring at the C–5–6 level and the C–6–7 level. He noted a bulging disc at L–3–4 and L–4–5. His findings were based upon review of x-rays taken by plaintiff's other physicians, an MRI and the reports of a myelogram taken previously. He found, upon physical examination of plaintiff, that she reported pain in the right trapezius muscle area and over the spine at C–7. He also found numbness over the ulnar distribution of the right arm, including the ring and little fingers and that her grip with the right hand was diminished. He found low back pain and numbness of the S–1 distribution along the lateral thigh, calf and foot on the right side.

On March 14, 1994, Ms. Skubis wrote Dayco and advised that based upon Dr. Mueller's report, long-term disability benefits had been approved from plaintiff's eligibility date until a date two months following Dr. Mueller's examination. The letter specifically stated "[w]e will strictly adhere to Dr. Mueller's recommendations and no further benefits will be administered." Ms. Skubis testified that as of March 14, 1994, the determination had been made by NAA that no further benefits would be paid after the end of March 1994, absent an appeal by the plaintiff. The NAA payment record reflects that the payment on April 28, 1994, was to be the "first and final" payment on the claim. At the time of this determination, NAA had only the medical records that it had received and obtained in January 1994, plus the report of Dr. Mueller.

On March 24, 1994, Dayco notified the plaintiff that her claim for long-term disability had been approved. She was further notified that Dayco was consequently processing her as a "Disability Retiree," and as such would be entitled to participate in Dayco's

Disability Retiree Medical Coverage Plan. Under this plan, plaintiff was required to pay 50% of the premium for herself and her spouse and Dayco paid 50%. Her employment was terminated effective March 24, 1994. By execution of the Dayco's Disability Retiree Medical Coverage Enrollment Form, the plaintiff elected on March 29, 1994, to enroll in the retiree medical coverage under the Dayco plan. She authorized Dayco to deduct the insurance premiums from her disability payments.

Dayco subsequently notified the plaintiff by letter dated April 13, 1994, that she would receive long-term disability benefits from October 1, 1993, to March 31, 1994, and these benefits would be paid to plaintiff in one lump sum after April 13, 1994. This notice did not specifically advise the plaintiff that she would receive no further benefits and it did not advise her of any reason for its action. On May 9, 1994, Dayco sent plaintiff a COBRA notice advising that due to termination of her employment, she was eligible to continue her health coverage for a period of up to 18 months by payment of the premium due. Her participation in Dayco's Disability Retiree Medical Coverage Plan thus ended.

Plaintiff timely appealed the determination of the length of her disability by letter to Dayco dated May 9, 1994. Plaintiff advised that she had resumed physical therapy, but that because of back spasms during her therapy session on May 6, 1994, the therapy session had been abandoned. Plaintiff advised that she was to be fitted with a TENS unit at her next therapy session. Accompanying the plaintiff's appeal was a letter from her attending physician Dr. Parris, in which he opined that the plaintiff was 100% disabled from her previous form of employment.

On May 13, 1994, the Ft. Scott office of Dayco forwarded the appeal with Dr. Parris' statement to Dayco's corporate headquarters for determination. It was subsequently forwarded to NAA. Ms. Skubis of NAA reviewed plaintiff's letter along with Dr. Parris' statement evidencing that plaintiff was disabled as of May 5, 1994. The statement of Dr. Parris was disregarded due to Dr. Mueller's opinion in his letter of February 8, 1994, that he then estimated the further length of plaintiff's disability to be two months.

Included in one of the NAA claim files related to the plaintiff's claim is an undated note "For Norinne" which reads:

> We want to deny. The doctor who wrote letter is her private physician. The doctor who IME'd her is a specialist. In most states private (family) physicians can't determine disabilities. If she wants to cover all bases we can IME her again since it has been 4 months since the last one and we know of no clause that Dayco has that limits IMEs within a certain time frame. If a second IME is done, we will go with that specialist's determination.

Based upon the reference that it had been four months since plaintiff's last IME, the court presumes the note was written in about June 1994.

On August 23, 1994, NAA sent letters to Dr. Parris and Dr. Arnold requesting updated medical information in order to determine plaintiff's continued disability. On September 12, 1994, Dr. Parris forwarded an Attending Physician's Statement in which he opined that the plaintiff was permanently disabled from her prior occupation. He noted that he did not expect a fundamental or marked change in the future and that plaintiff would never return to her prior occupation. He noted that plaintiff had "retrogressed." He reported that the plaintiff was experiencing "pain and numbness in her right arm and hand, neck pain, low back pain, multiple joint achiness, decreased range of motion—almost polyarhralgia." In explaining the nature of treatments, he described medications, suggested an arheumotoid profile, a consult with a rheumotogist and the use of intermittent pelvic traction. A note was placed on Dr. Parris' report of September 16, 1994, stating that it did not contain sufficient information. No response was received from Dr. Arnold. No follow-up requests for information were made to either Dr. Arnold or Dr. Parris.

On October 28, 1994, NAA advised the plaintiff by letter, that Dayco was denying her appeal. The letter stated in pertinent part:

> As of October 28, 1994, we have yet to receive medical information we have requested from Dr. Parris and Dr. Arnold.

Based on insufficient medical documentation, and our Independent Medical Exam we must stand by our original determination to deny any further benefits.

Other than the requests by letter of August 23, 1994, neither Dayco nor NAA made any effort to obtain medical records from plaintiff's physicians after January 1994. It did not follow up with Dr. Arnold to determine why he did not respond to its August 23, 1994, request. It did not contact Dr. Parris and request additional information.

Between May 9, 1994, and October 28, 1994, plaintiff was not advised that additional medical records were required or that Dr. Arnold had not responded to the request for continuing medical information. She was not requested to undergo an additional IME. Plaintiff was not advised that it was Dayco's policy not to consider opinions regarding disability submitted by family physicians.

Dr. Parris was the plaintiff's family physician at all relevant times. He is board certified in family practice. He regularly sees patients with neck and back complaints and has performed pre-employment physicals, as well as return to work physicals, for Dayco and others. In his opinion, the plaintiff was disabled from her work in February and May 1994 and she continued to be disabled up to and at the time of trial. Her condition was not compatible with clerical or sedentary type of work. He continues to treat her and has not released her to go back to work.

On September 29, 1994, the plaintiff saw Dr. Arnold L. Katz, a rheumatologist, upon referral from Dr. Parris. Plaintiff did not advise Dayco of this consultation and Dayco was not aware of it at the time of its decision to deny the plaintiff benefits on October 28, 1994.

Dr. Katz examined the plaintiff on September 29, 1994, and diagnosed her condition as fibromyalgia. After reviewing the records of treating physicians and based upon his examination and treatment, Dr. Katz opined on April 30, 1996, as well as during his trial testimony, that the plaintiff had been disabled since the time of her automobile accident. She was also diagnosed with hypothyroidism and osteoarthritis. She was found to have a bulging disc in the cervical area and a herniated disc in the lumbar area. In his

trial testimony, Dr. Katz opined that the plaintiff was disabled from work.

Ms. Skubis admitted in her trial testimony that if plaintiff suffered from the conditions of fibromyalgia, hypothyroidism, degenerative disc disease and if her symptoms and complaints were the same or worse than when she saw Dr. Mueller in February 1994, plaintiff would be disabled.

All of the evidence before Dayco and NAA established that the plaintiff was disabled from her employment from the date of her automobile accident until her examination by Dr. Mueller in February 1994, and was so disabled on the date of the IME. Not only did Dr. Mueller find the plaintiff disabled on February 8, 1994, but he gave as his "estimate" of the length of plaintiff's further disability a period of two months, suggesting that the plaintiff should be given further physical therapy, vigorously performed, and weaned from her brace. The only evidence before NAA as to the plaintiff's disability after the date of the IME was furnished by Dr. Parris in the form of two brief reports dated May 5, 1994, and September 12, 1994, in which Dr. Parris opined that the plaintiff remained 100% disabled from her previous form of employment.

Prior to the expiration of the two month period, Dayco and NAA determined, without further information, to deny any benefits after the expiration of the two month period. Dayco was advised by NAA on March 15, 1994, or approximately six weeks after the examination, that based upon the opinion letter of Dr. Mueller, no benefits would be furnished after March 31, 1994. There is no evidence in the files of Dayco or NAA that Dayco or NAA made any effort to determine the actual status of plaintiff's disability after February 8, 1994. As is obvious from a review of his letter, Dr. Mueller did not render an opinion as to the plaintiff's disability at any time after his examination, only his estimate of what her condition would be with certain medical treatment. Dr. Mueller confirmed this in his trial testimony. Neither Dayco nor NAA knew or attempted to determine whether the suggested medical treatment had been undertaken.

During discovery, the plaintiff inquired by interrogatory concerning the identity of the Dayco's ERISA plan for long-term disability. Dayco responded that "[t]he Plan is identified by the Enrollment Guide—a copy of which has been previously supplied to Plaintiff." In response to an interrogatory concerning the criteria for obtaining long-term disability benefits under the plan, Dayco responded by referring to the Enrollment Guide. The interrogatory answers were signed on April 8, 1996. Under date of February 12, 1996, the plaintiff requested a copy of all documents which Dayco relied upon in support of plaintiff's termination or rejection of long-term disability benefits. Dayco did not file an answer to the discovery request and did not produce a copy of a plan document other than the Enrollment Guide. In a telephone conference call with the court during which argument on a motion to compel production of the requested documents was held, Dayco's counsel advised that he had produced all documents supplied to him by either Dayco or NAA. It is undisputed that no plan document other than the Enrollment Guide had been produced although Dayco's counsel represents that he had requested all such documents from Dayco. Dayco's counsel has advised the court that on May 6, 1996, in the course of interviewing an employee of NAA he learned that NAA had a copy of a plan document. No prior request by Dayco or its counsel had been made to NAA for a copy of the plan document, although it was administering the plan on behalf of Dayco. No employee of NAA had previously been interviewed. On May 7, 1996, NAA furnished to Dayco's counsel what it represented to be a copy of the Dayco long-term disability plan. A copy of this plan document ("the 1986 plan") was furnished to plaintiff's counsel for the first time when transmitted by letter dated May 8, 1996.

Dayco has offered into evidence what its counsel represents and an employee of NAA has identified as the plan document for Dayco's Long-term Disability Plan. It appears to have been effective on November 1, 1986. Under the terms of the 1986 plan, that plan was to be administered by a committee of not less than three persons appointed by the Board of Directors of Dayco Products, Inc. The Committee was composed of D.E. Ross, S.K. Kerns, B.A. McNiel and R.J. Wessendarp. Under Article VI, the general administration of the plan and the responsibility for carrying out its provisions was placed in the Committee. The Committee had the responsibility to interpret and construe the plan and to determine all questions of eligibility, for and termination of benefits payable under the plan. Under Article 6.3, the Committee may appoint "from its members or Employees of the Company such subcommittees, agents or administrators as it may determine, and may delegate to any such persons any power or responsibility otherwise reserved to it hereunder." Under Article 6.4, "[t]he Committee shall be the Named Fiduciary, Administrator and Plan Administrator of the Plan ..." There is no evidence that the Committee's responsibilities were delegated in accordance with the terms of the 1986 plan. While NAA had been employed to administer Dayco's long-term disability plan and to process claims under it, no evidence has been presented which granted authority to NAA to perform the functions of the Committee under the 1986 plan. Under the terms of the 1986 plan, such delegation would not be possible as NAA is not an employee of the company or a member of the Committee. There is no evidence that the 1986 plan has been amended.

Under the 1986 plan, benefits cease upon (a) cessation of disability, (b) failure of an employee to submit to a medical examination required by the Committee or to furnish other proof of the continuance of the disability; (c) failure of the employee to participate in a program of rehabilitation, required by the Committee in writing; (d) upon reaching age 65.

The definition for disability under the 1986 plan is inconsistent with the Enrollment Guide for the plan effective on January 1, 1993. Under the 1986 plan, "disability" is defined as a physical or mental condition which qualifies an employee for disability benefits under federal Social Security law. Under the "Best" plan in the Enrollment Guide, benefits are available when an employee is disabled from their own occupation for a period of up to 24 months, thereafter, from performing any occupation for which

the employee is reasonably suited based upon training, education and experience.

The Enrollment Guide does not specifically reference a plan document which would set out, in detail, the terms of the plan. The only reference to any plan document, other than the Enrollment Guide, is found in small print on the first page of the Guide and provides:

> Every effort has been made to be sure that the information contained herein is accurate; however, in the case of any discrepancy, the provisions of the Legal Plan Document will govern.

The Enrollment Guide offers no information concerning administration of the plan or the administrator's duties or discretion. It contains no information concerning submission of claims or appeals. It contains no information concerning the procedure for determining disability or the termination of benefits.

## CONCLUSIONS OF LAW

The court reviews an ERISA action brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of an employee benefit plan under the "de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This standard applies regardless of whether the plan is funded or unfunded. *Id.* When such discretion is granted under the plan, the court reviews the administrator's decision under the arbitrary and capricious standard. *Sandoval v. Aetna Life and Casualty Insurance Co.,* 967 F.2d 377 (10th Cir. 1992). When the administrator of the plan is operating under a conflict of interest, that fact may be considered by the court in determining whether there was an abuse of discretion. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957. When considering whether the decision was arbitrary and capricious, the court may generally consider only the arguments and evidence before the administrator at the time it made the decision. *Sandoval,* 967 F.2d at 380. In its determination as to whether the administrator's decision was arbitrary and capricious, the court reviews the record before the administrator to determine whether there was substantial evidence to support the decision. *Id.* Substantial evidence is such evidence that a reasonable mind would accept as adequate to support the conclusion reached by the administrator. It is more than a scintilla and less than a preponderance. *Id.* at 382.

29 U.S.C. § 1133(1) provides that certain procedural steps must be followed by a plan in determining whether to terminate or deny benefits. Written notice must be provided to the participant, by the plan, setting forth the specific reasons for denial or termination, drafted in a manner calculated to be understood by the participant. 29 U.S.C. § 1133(2) provides that the plan must afford every participant a reasonable opportunity for a full and fair review of a decision denying a claim for benefits by the appropriate fiduciary. *See Sandoval,* 967 F.2d at 381.

The action was tried commencing May 21, 1996. The court had entered a pretrial order on April 24, 1996. At the time of the final pretrial conference on April 8, 1996, and the entry of the final pretrial order in the case, the plaintiff alleged, and the defendant did not deny, that the plaintiff was a participant in the long-term disability program known as "FlexChoice Long Term Disability Plan" and that the plaintiff had elected the "Best" plan option which did not require the plaintiff to satisfy social security criteria in order to be entitled to benefits under the plan. The only issues of fact identified under the pretrial order were whether the defendant violated ERISA in the handling of the plaintiff's long-term disability claim and the scope and amount of damages. The issue of law was identified as whether the defendant's conduct violated ERISA. Subsequently, defendant's counsel was provided with what was represented by NAA to be the benefit plan. Defendant filed a motion to amend the pretrial order on May 14, 1996, one week before trial. The defendant requested that the court enter an order to allow "the addition of the Plan document at the trial of this case." The court construed the motion as one to allow the alleged plan document to be added to the defendant's list of exhibits. To the extent that this was the relief requested, the motion

was granted. As to admissibility of the 1986 plan, under the stipulations of the parties made at the final pretrial conference, the motion was overruled and the admissibility of the document is considered elsewhere in this opinion.

No defenses to the payment of the claim have been asserted which are based upon the specific terms of the 1986 plan. The only defenses raised to the payment of the claim are that plaintiff failed to provide medical evidence of disability, plaintiff failed to exhaust remedies under the plan, defendant lacked specific intent to deprive plaintiff of benefits under ERISA and defendant's actions were in accord with the plan.

█ In order to determine the applicable standard of review, the court is first required to make a finding as to which of two documents is the applicable disability plan. The court finds that the defendant's applicable long-term disability plan, in which the plaintiff was a participant, is that which has been referred to as the "FlexChoice Benefit Plan." The plan was effective as of January 1, 1993, and was embodied in the Enrollment Guide. The terms of the plan allowed the plaintiff to choose the disability benefits to which she would be entitled. Plaintiff chose the "Best" plan. Plaintiff was entitled to benefits if she was unable to reasonably perform the responsibilities of her own occupation for a period of up to 24 months, thereafter, if she was unable to reasonably perform the responsibilities of any occupation for which she was suited based upon training, education and experience until age 65. Her monthly benefit was to be 60% of her monthly salary. She was required to provide physician verification of her disabled status no less than annually. The plan does not identify the administrator and does not provide the administrator of the plan with discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

The court rejects the defendant's argument that the 1986 plan, produced on the eve of trial, is applicable to this claim. The defendant did not produce this plan during the course of discovery. The defendant relied on the Enrollment Guide related to the FlexChoice Benefit Plan as the plan document. At the final pretrial conference, the defendant relied on the same Enrollment Guide. The defendant offered no evidence by an officer or employee of Dayco identifying the 1986 plan as the effective disability plan. Christine Werth, the manager of welfare benefits and corporate office human resources with Mark IV Industries, the parent corporation of Dayco, testified that she believed the 1986 plan to be the effective plan, but she admitted that she had never seen this plan prior to the date of her testimony, as whatever plan had been in place had been transmitted directly to NAA by Dayco. This testimony is insufficient to identify the 1986 plan as the effective plan on the date plaintiff became disabled. The 1986 plan was offered as a part of an exhibit which also had other disability plans, including those contained in the Enrollment Guide, and was identified by an employee of NAA. Such identification, however, is insufficient to properly lay a foundation for identification or admissibility of the 1986 plan. The Enrollment Guide which the parties agreed set out the definition of disability based upon the option selected by plaintiff contains a definition of disability which is contrary to the only definition of disability under the 1986 plan. The Enrollment Guide provides that where its terms are contrary to those of the "Legal Plan Document" the terms of the latter shall control. If the 1986 plan were considered as the applicable plan document, such a construction in this case would clearly be unreasonable and contrary to the intent of the parties. A further inconsistency exists in determining the benefit offsets against the monthly benefit payable under the plan. Under the Enrollment Guide only three offsets are allowed. The 1986 plan, Article 4.3, has offsets other than the three described in the Enrollment Guide. Under the 1986 plan, a specific Committee was designated as the administrator of the plan. All of the other evidence before the court was that NAA had been selected as the administrator of the plan effective January 1994. There is no provision in the 1986 plan which authorizes an administrator that is not an employee of Dayco or a member of the designated Committee. There is no evidence that the Committee named in the 1986 plan or a designated member of the Committee had anything to do with the plaintiffs claim. Neither Day-

**1264**

co nor NAA referred to any provision of the 1986 plan when benefits were denied or when the appeal was denied. Consequently, the court finds that the defendant has failed to prove that the document referred to as the 1986 plan is the applicable plan that was effective at the time of the plaintiffs disability.

The defendant had a duty to come forward with its disability plan. It did not do so. The belated tender of the 1986 plan by NAA does not prove the existence of the plan document nor that it was effective in light of all of the other evidence concerning the adoption of a new plan effective January 1993.

■ Having determined the applicable plan, the court returns to the standard of review. Because the plan does not provide for the exercise of discretion by the administrator in the determination of the participant's eligibility for benefits, the court concludes that it must review the defendant's determination under the de novo standard. Notwithstanding, whether the applicable standard of review is "arbitrary and capricious" or "de novo" the result in this case would be the same. Considering only the evidence before Dayco at the time of its decision to terminate benefits, the decision to terminate plaintiff's disability benefits effective March 31, 1994, was arbitrary and capricious and is not supported by substantial evidence. Further, the denial of the plaintiffs appeal was arbitrary and capricious and is not supported by substantial evidence. On neither occasion did Dayco nor NAA consider the evidence before it, all of which supported a claim of disability on the last date that medical information had been obtained. There was no evidence that the plaintiff's disability had terminated. The opinion of Dr. Mueller can only fairly be considered to be an opinion that plaintiff's disability might be expected to terminate in two months if the plaintiff had certain physical therapy, assuming that such therapy was successful. No reasonable mind could accept the evidence in the files of Dayco or NAA as adequate to conclude that the plaintiff's disability, established at a year in duration and found to exist by the independent examining physician in February 1994, terminated on March 31, 1994, without additional medical evidence or another examination. The defendant did not even wait until March 31, 1994, to issue its decision to terminate benefits but rather did so on March 14, 1994. Of particular significance is the statement on that date that "no further benefits will be administered." The defendant did not conduct a full and fair review of the plaintiff's disability claim.

■ The defendant clearly violated ERISA by failing to advise the plaintiff of the specific reasons for termination of her benefits effective March 31, 1994, in a manner calculated to be understood by her as required by 29 U.S.C. § 1133(1). Not only did the defendant fail to specifically advise the plaintiff that her benefits were being terminated, the defendant failed to give any reason whatsoever for its action. This is further evidence of defendant's intent to arbitrarily terminate the plaintiff's benefits.

■ Dayco further violated the provisions of 29 U.S.C. § 1133(2) by failing to give plaintiff a full and fair review of the decision denying the claim and terminating her benefits. The reasons stated for denial of the claim on review are not supported by substantial evidence. The reasons proffered for such denial were that NAA had not received the information requested from Dr. Parris and Dr. Arnold, it had insufficient medical documentation and the report of Dr. Mueller's independent medical examination. Contrary to the assertion in the letter, Dr. Parris had provided the requested information. NAA did nothing to obtain medical information regarding plaintiff after February 8, 1994, other than mail two letters, one to Dr. Parris and one to Dr. Arnold, on August 23, 1994, requesting "updated medical information." Dr. Parris responded by providing NAA with a current medical status on September 12, 1994, on the form supplied to him by NAA opining that plaintiff was permanently disabled from her former occupation. NAA did not ask him for addition medical records or information and did not advise him that what he had submitted was inadequate. When Dr. Arnold did not respond to the request for an update of medical information from February 1994, NAA did not follow up or make any effort to determine whether Dr. Arnold had information on the plaintiff's medical condition during the requested peri-

od. NAA did not request that plaintiff furnish current medical information and did not advise her that NAA had not received the required responses from Dr. Parris or any response from Dr. Arnold. In determining the appeal, Dayco or NAA ignored the opinions of Dr. Parris of May 5, 1994, and September 12, 1994, stating that plaintiff was disabled from returning to her work. The only evidence before Dayco and NAA was that plaintiff was disabled. Notwithstanding, neither Dayco nor NAA requested another independent medical examination. The decision to deny the appeal was arbitrary and capricious.

Dayco's intent was to deny plaintiff's claim throughout. Such intent was demonstrated by its failure to obtain all of the known medical records in January 1994 and thereafter, its strained construction of the opinion of Dr. Mueller, the March 14, 1994, letter of NAA to Dayco advising that no further benefits would be administered after March 31, 1994, the notation on the payment record of April 28, 1994, that the payment was the "first and final" payment, the undated handwritten notation in approximately June 1994 of a desire to deny the claim, its complete disregard of the evidence by all of the treating physicians who gave opinions from time to time that the plaintiff was disabled and its refusal to consider the opinions of Dr. Parris because he was a family physician rather than a "specialist." It was not even of significance to Dayco that it used Dr. Parris in Ft. Scott, Kansas for disability determinations. There is no evidence in the record that plaintiff was not disabled on March 31, 1994, or that her disability terminated on that date. Further, there is no evidence in the record that plaintiff was not disabled on the date the appeal was denied. All of the evidence in the record is that plaintiff was disabled from reasonably performing the responsibilities of her occupation, yet this evidence was ignored by Dayco.

Applying the de novo standard of review only to the evidence before Dayco and NAA, the court's decision would be the same. All of the evidence in the Dayco and NAA files established that from the date of the automobile accident until September 12, 1994 the plaintiff was disabled from reasonably performing the responsibilities of her occupa-

tion. The evidence further established that it was unlikely that the plaintiff would ever return to such occupation. A de novo review of the evidence in the files of Dayco and NAA compels a determination that, on the date of the termination of the plaintiffs benefits, as well as on the date of the denial of the appeal, the plaintiff was disabled under the terms of the plan and the court so finds.

The court has also made a de novo review based upon the evidence that was produced at the trial of the action. The case was tried to the court with evidence offered by both sides. The evidence included testimony by the plaintiff, testimony by Dr. Parris, deposition testimony of Susan Skubis, Jim Simmons, Christine Werth and Dr. Katz. Defendant interposed no objection to the admission of the evidence at the time of trial. When a plan fails to make factual determinations, the court is entitled to make its own findings. In making these findings, the court may admit such evidence as will enable it to make an informed judgment. *Welsh v. Burlington Northern, Inc. Employee Benefits Plan*, 54 F.3d 1331 (8th Cir.1995). The court also notes that while it would normally be inappropriate to present additional information for the first time on appeal, the evidence presented herein as to matters specifically considered by the plan only minimally strengthened the plaintiff's claim. The court therefore, concludes that under the circumstances of this case it is appropriate for the court to consider this evidence.

■ Further, the court is not required to remand for additional consideration by the plan when such would be a useless formality. *Welsh v. Burlington Northern, Inc. Employee Benefits Plan*, 54 F.3d 1331 (8th Cir.1995); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980) (*cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)). When the evidence in the record permits only one conclusion, the court may properly impose the result. Requiring the plan to reconsider would be a waste of time. Also, when the plan has demonstrated a manifest unwillingness to give fair consideration to the evidence supporting the claim, the claim should not be remanded.

The court concludes that due to the arbitrary, perfunctory manner in which Dayco and NAA handled the review of the plaintiff's claim, the claim should not be remanded for additional consideration except as consistent with this order. Dayco evidenced complete disregard for the plaintiff's rights under the plan as well as to the plaintiff's right to a full and fair review of the decision denying benefits. Dayco and NAA were predisposed to deny benefits at the outset and to terminate them at the earliest opportunity. Dayco gave no credence to evidence submitted by plaintiff or evidence which was favorable to her. NAA was either inept or lazy in examining the claim and the appeal submitted by the plaintiff. It refused to review the available medical evidence or to obtain current medical evidence which would have been readily available to it had it made appropriate inquiry. Although it had a medical opinion confirming current disability and projecting the length of that disability, based upon certain assumptions concerning the success of physical therapy, it had no interest in determining whether the prognostication of Dr. Mueller was accurate or the status of the plaintiff at the time it elected to terminate benefits. Even in the light of a new medical opinion received after the appeal was filed, it was determined to find a basis for denial of the appeal without any investigation of the plaintiff's status. The reasons for denial of the appeal were clearly in error had NAA simply reviewed its own files. Remand would be a useless formality. The bad faith of Dayco and NAA throughout the entire claim and appeal process is adequately demonstrated by the evidence in this case. There is no reason to believe that Dayco and NAA would be more likely to give the plaintiff's claim a full and fair review at this time than it did originally.

The court finds that the evidence before it establishes that the plaintiff was disabled from reasonably performing the responsibilities of her occupation for the two year period following the date on which she was first eligible to receive benefits under the plan. The uncontradicted testimony of Dr. Katz and the plaintiff establishes that the plaintiff is unable to reasonably perform responsibilities of any occupation for which she is suited by training, education and experience, the last medical evidence being on April 30, 1996, the date of Dr. Katz' deposition. The court therefore, finds that plaintiff is entitled to continuing disability benefits after the expiration of the initial two year period.

The court also finds that in the event that the court had determined that the 1986 plan was the applicable plan, at least to the extent that its terms were not inconsistent with benefit provisions of the FlexChoice Benefit Plan, the result herein would be the same. In addition to the reasons stated above, the court would also find that Dayco and NAA violated the terms of the 1986 plan by denying the plaintiff a review by the Committee and by terminating benefits contrary to the provisions of Article 4.4. None of the grounds for termination of benefits under that plan existed at the time that benefits were terminated.

Federal law provides that a participant may sue to recover benefits due, to enforce rights to future benefits, or to clarify rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). Included within that authority is power to determine benefits due and to award them. *Welsh v. Burlington Northern, Inc. Employee Benefits Plan,* 54 F.3d 1331 (8th Cir.1995). Once the court has determined that the participant has been wrongfully denied benefits, the court enters judgment for the amount of the benefits due with prejudgment interest for the unpaid sums from the date that they were due under the terms of the plan. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567 (8th Cir. 1984). The court may vacate a termination of benefits and order them reinstated. *Halpin v. W.W. Grainger,* 962 F.2d 685 (7th Cir.1992). The court may also clarify the participants rights to future benefits under the terms of the plan and enter such other equitable relief as may be appropriate.

The plaintiff is entitled to disability benefits at the rate of $945.25 per month, beginning April 1, 1994, and continuing until such time as it is determined, in accordance with the terms of the plan as construed herein, that she is no longer disabled. Plaintiff is further entitled to interest on each unpaid installment at the applicable interest rate from the first day of the month following the

date that the payment was due until paid. Because of the defendant's wrongful denial of the claim, the plaintiff was terminated from participation in the Disability Retiree Medical Coverage Plan whereby the employer paid 50% of the monthly medical premiums and was required to obtain medical insurance. The plaintiff is entitled to reimbursement for all medical insurance premiums paid since April 1, 1994, in excess of the amount which she would have been required to pay had she not been terminated from participation in the disability retirement plan and the disability retiree medical plan. The plaintiff is entitled to interest on each premium paid from the date of payment until the date of payment by the defendant. The defendant shall either reinstate the plaintiff in the defendant's disability retirement group medical plan or continue to reimburse the plaintiff for all sums she is required to pay for equivalent medical insurance coverage in excess of the amount she would have been required to pay if allowed to participate in the defendant's plan. Such reinstatement and/or reimbursement shall continue as long as the plaintiff is entitled to benefits under the long-term disability plan.

Under the terms of the plan, plaintiff is required to submit continuing verification of her disability status on an annual basis by her physician. The last information available to the employer was the deposition of Dr. Arnold Katz taken on April 30, 1996. Plaintiff is therefore, required as a condition of receiving continuing benefits, to provide the required verification on or before April 30, 1997. Plaintiff is entitled to benefits until age 65 upon providing the appropriate verifications. The court has great reluctance to remand the case for determination of plaintiff's entitlement to benefits in the future under the facts of this case. However, the court finds this to be the appropriate remedy under existing law and trusts that the court's admonitions herein and a fair review of the past deficiencies by Dayco will instruct Dayco in its future determinations as to plaintiff under the plan as defined and determined by the court herein and in accordance with this decision.

■ Plaintiff has also sought penalties under 29 U.S.C. § 1132(a)(1)(A), as provided by 29 U.S.C. § 1132(c), due to defendant's failure to provide information to plaintiff within 30 days of the request. Plaintiff's claim is based upon the defendant's failure to provide a copy of the plan until shortly before the trial of the case. Plaintiff's claim for penalties is denied. The only evidence of a demand for information which was not supplied within the 30 day period was plaintiff's discovery request under Fed.R.Civ.P. 34 for the production of all documents on which the defendant relied in terminating the plaintiff's disability payments and in rejecting her claim for such benefits. The plan was never specifically requested. The court declines to impose penalties under the circumstances existing in this case. No formal request for information under the plan as contemplated by 29 U.S.C. § 1132(c) was made. Plaintiff simply made no demand for the plan document under ERISA. The request which was made was under the Federal Rules of Civil Procedure which has its own sanction provisions under Rule 37. While a motion to compel discovery was filed under Rule 37, it was subsequently withdrawn at the time of oral argument by telephone conference call. The 1986 plan and all other documents were belatedly produced shortly before trial. An award of attorneys' fees would be appropriate under Fed.R.Civ.P. 37, however, in light of the court's determinations herein, it is not necessary for the court to consider the issue as a sanction under the discovery provisions. The matter can be further considered should a claim for attorney's fees be made as set forth hereafter.

The court does feel compelled to comment on the defendant's failure to identify and produce a copy of its long-term disability plan. Counsel for the defendant has suggested that he produced all that was provided to him by the defendant. He also suggests that he had no contact with NAA, the claimed administrator of the plan, until May 6, 1996, approximately two weeks before trial. It is inexplicable to the court why every effort was not made by Dayco and its counsel to identify the plan document throughout the pendency of the lawsuit until two weeks before trial. It would normally be in the interests of the defendant employer to produce a copy of the plan document. The court suspects that the failure to produce the plan was

due to Dayco's uncertainty as to the effective plan document. Such effort to identify and locate the plan document would have reasonably included contacting the administrator of the plan. It is unlikely that any administrator of a plan would undertake to administer a plan or could conceivably perform its duties without a copy of the plan document at its immediate disposal. Yet no request was made upon NAA until two weeks prior to trial. Not only was what Dayco apparently considered the plan document not produced until two weeks before trial, but NAA's file was not produced until such time. This delay caused the entry of a pretrial order which did not directly address the specific plan which defendant claimed to be applicable, or issues related to its applicability. This conduct is further evidence of the arbitrary manner in which the defendant has administered its disability plan in this case.

The court has considered that the defendant was operating under a conflict of interest at the time of the review of the plaintiff's claim. Such conflict of interest may be taken into account in reviewing the administrator's decision. In this case, the plan was unfunded. The conflict of interest is apparent. However, the court's determination would be the same, with or without the conflict.

The plaintiff requests an award of attorneys' fees under 29 U.S.C. § 1132(g). The court will consider the issue of attorneys' fees made in accordance with Fed.R.Civ.P. 54(d) (2) and D. Kan. Rule 54.2.

In summary, the court ORDERS AND ADJUDGES as follows:

1. Defendant's Motion for Protective Order, Motion to Quash; or in the Alternative, Objections to the Amended Notice to Take Deposition Duces Tecum of Christine Werth (doc. 40) is overruled as moot.

2. Plaintiff's Motion to Strike (doc. 46) is overruled.

3. Plaintiff's Motion to Strike Testimony of Christine Werth (doc. 45) is overruled.

4. The plaintiff is entitled to and shall have judgment for disability benefits at the rate of $945.25 per month, beginning April 1, 1994, and continuing until such time as it is determined, in accordance with the terms of the plan as construed herein, that she is no longer disabled.

5. The plaintiff is further entitled to and shall have judgment for interest on each unpaid installment at the applicable interest rate from the first day of the month following the date that the payment was due until paid.

6. The plaintiff is entitled to reimbursement for and have judgment for all medical insurance premiums paid since April 1, 1994, in excess of the amount which she would have been required to pay had she not been terminated from participation in the Disability Retiree Medical Coverage Plan.

7. The plaintiff is entitled to and shall have judgment for interest on each premium paid for medical insurance coverage since April 1, 1994 from the date of payment by plaintiff until the date of payment by the defendant.

8. The plaintiff is entitled to reinstatement in the defendant's Disability Retiree Medical Coverage Plan, with the defendant paying 50% of the monthly medical premiums, or alternatively, the defendant shall continue to reimburse the plaintiff for all sums she is required to pay for equivalent medical insurance coverage in excess of the amount she would have been required to pay for such coverage if allowed to participate in the defendant's plan. Such reinstatement and/or reimbursement shall continue as long as the plaintiff is entitled to benefits under the long-term disability plan.

Plaintiff shall have and recover her costs of this action.

Judgment shall be entered in accordance herewith.

IT IS SO ORDERED.