**Edward MEIN, Plaintiff,**

v.

**POOL COMPANY DISABLED INTERNATIONAL EMPLOYEE LONG TERM DISABILITY BENEFIT PLAN, POOL COMPANY, INC., Defendants.**

Civil Action No. 96–B–1095.

United States District Court,
D. Colorado.

Jan. 8, 1998.

Steven R. Barrett, Barrett Law Offices, Denver, CO, Robert L. Liebross, Denver, CO, for Plaintiffs.

Thomas R. Dolven, Clinton P. Swift, Hall & Evans, LLC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action for violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, defendants Pool Company Disabled International Employee Long Term Disability Benefit Plan (Plan) and Pool Company, Inc. (Company) (collectively, defendants) move to dismiss the state law claims of plaintiff Edward Mein (Mein) for tortious bad faith (claim one), intentional interference (claim three), infliction of emotional distress (claim four), and deceit (claim five). Defendants also move for summary judgment on claims two and eight for breach of fiduciary duty and claims six for declaratory relief and seven for benefits. Mein cross-moves for summary judgment on his claim "that he has been wrongfully denied benefits under the Plan, in violation of ERISA § 1132(a)(1)(B)." I construe his motion as one for summary judgment on claims two, six, seven, and eight. The motions are adequately briefed and oral argument will not materially aid their resolution. I will grant defendants' motion to dismiss claims one, three, four, and five. I will also grant defendants' motion to strike demand for jury trial. Further, I will grant defendants' cross-motion for summary judgment on claims two and eight and deny plaintiff's cross-motion. I will grant plaintiff's motion for summary judgment on claims six and seven and deny defendants' cross-motion.

### I.

Edward Mein was an employee of Pool Company, Inc. working in Saudi Arabia as a rig manager on an oil drilling rig. On July 25, 1981, Mein was injured when he fell off the rig and landed on his neck and shoulders. ERISA Claim File (ECF) 0000921. The initial physician's report in Saudi Arabia states there was a fracture of the 5th lumbar vertebra. ECF 0000864–65. In August, 1981, Mein returned to the United States where he was examined and treated by Dr. John Armstrong. In an August 14, 1981 letter, Dr. Armstrong stated:

I've examined Mr. Mein after his return from Saudia Arabia.... X-rays done at the hospital here... showed that he had left-sided spondylolysis of L5. These repeated by Dr. Osborne who is the orthopedist and Dr. Boyle who both felt that this was not an acute fracture. He did not have an acute compression fracture of his vertebral body or transverse process. It is common to have back pain with an injury especially with an underlying spondylolysis. Because there is no underlying vertebral body compression fracture, his activity level has been increased and he, hopefully will start doing muscle strengthening exercise to strengthen the area. He is to avoid any heavy lifting until we feel that he has convalesced and is having no symptomatology. He has no neurologic defects and on follow-up since returning home, has had continued improvement in his pain.

ECF 000917.

In October 1981, Mein underwent arthroscopic surgery for longstanding traumatic arthritis of his right knee. By mid–1983, Mein, who continued to work for the Company, was experiencing increased back pain from the 1981 injury. Mein returned to Saudia Arabia on September 13, 1983, but returned to the United States a week later and was admitted to St. Joseph's Hospital, in Denver, Colorado, with complaints of severe pain in his left leg and back. ECF 000862. A report written September 21, 1983, by Dr. William Gamble, Denver Orthopedic Clinic, stated:

Chief complaint is low back and left leg pain. Patient has been seen for a low back pain before, but never had severe left leg pain until four days ago when while working on a rig in difficult quarters he noted a gradual onset of pain, which has become rapidly worse. He's had some intermittent back pain prior to that. He's flown home from Saudia Arabia for medical care.

The patient stands with a rigid lumbar spine which is flat. He has a list to the left and back motions are markedly limited. Straight leg raising is limited by 45 degrees on both sides and contralateral straight leg raising is positive. There is no

gross weakness or sensory loss in the legs and reflexes are normal. ECF 000862.

Mein was admitted to Saint Joseph Hospital on September 29, 1983, for bed rest and physical therapy. A lumbar myelogram was performed on September 27, 1983, with no evidence of disc herniation. ECF 000848. Lumbar spine x-rays showed no evidence of compression fractures. *Id.* A CT scan was done which was essentially normal. *Id.* An EMG was performed and suggested that Mein had "some L5 denervation in the left leg." Dr. H.R. Boyd, a consulting physician concluded:

This patient has improved with bed rest and the question is what should be done with him at this time. He does not appear to have frank herniated disc problems. the likelihood that he can be improved by any surgical procedure seems to be fairly small. Despite the fact that he has had recurrent pain, even while wearing his back support, he does not appear to have sufficient evidence at this time to consider an operative procedure. Perhaps his condition will become more obvious with the passage of time.

*Id.*

An attending physician statement completed by Dr. John D. Leidholt stated Mein's diagnosis was "herniated disc," he was totally disabled from September 20, 1983 to November 12, 1983. In a November 15, 1983, letter, Dr. Armstrong stated:

Ed Mein was initially seen on September 21, 1983, in Denver and was felt, at that time, to have a herniated disc. However, he had a Cat Scan, myelogram, EMG and a complete workup November 1, 1983, and there was found to be no herniated disc. It was felt, at this time, that he had degenerative changes in his spine from an old fracture, had spur formation that had encroached upon his neural foramina, and had strain of the ligaments and tendons in the lower back. Conservative measures were instituted. Surgery was not felt to be necessary at the time and he was started on vigorous physical therapy, placed on an exercise program, given a TNS unit and, with this conservative therapy, has done well. He requires no medication at this time and is doing his therapy without any problems. The only restriction would be that he not lift anything heavier than 75–100 pounds. There is a chance of recurrence, but it is not lumbar disc disease and probably with appropriate physical therapy, conditioning exercises and weight loss, he will have minimal symptoms in the future.

I saw and examined him today. He had an essentially normal exam. Reviewing his therapy with the physical therapist, he is doing well and we think it is perfectly acceptable for him to go back to work at this time.

ECF 000843.

Mein returned to work, and at some point, returned to Saudia Arabia. He left Saudia Arabia again on January 27, 1985, with back problems. A February 28, 1985, letter from Dr. Leidholt stated that Mein was under his care for a ruptured intervertebral disc, cervical disc disease with right radicular pain and right sciatica. A CAT scan taken on February 1, 1985, showed a very small central protrusion or herniation of the disc at L5–S1. ECF 000831. From January 21, 1985 through July 21, 1985, Mein received short-term disability benefits from the Company. ECF 000550. Mein then received long-term disability benefits (LTD benefits) from July 22, 1985, through December 31, 1994.

In January, 1985, disability benefits were provided to Pool Company under an insurance policy issued by Aetna Life Insurance Company (Aetna). Aetna also administered the benefits claims. Mein applied for LTD benefits on May 29, 1985 and Pool sent the application to Aetna. Aetna investigated and approved Mein's LTD benefits claim effective July 22, 1985.

Under the Aetna policy in effect in 1985 under which Mein's LTD benefits were paid "total disability" was defined as follows:

"Total disability" or "totally disabled" means, during the first twenty-four months of any one period of disability, that the employee is unable, solely because of disease [or] accidental bodily injury ... to work at his own occupation; and thereaf-

ter during the continuance of such period of disability, that the employee is unable solely because of disease [or] accidental bodily injury, to work at any reasonable occupation.

"Reasonable occupation" means any gainful activity for which the employee is, or may reasonably become fitted by education, training or experience. However, work under an approved rehabilitation program will not be considered a reasonable occupation.

In 1988 and 1989, Aetna's monitoring of Mein's condition led it to conclude that he remained totally disabled. Then, in February, 1991, Dr. Louis Winkler, an independent medical examiner who examined Mein reported that Mein was totally disabled under both definitions in the Aetna policy. He also opined that Mein "[was] an excellent candidate for vocational rehabilitation." ECF 000279.

Later, in May, 1991, a status report was prepared for Pool which stated:

Based on results of third-party medical evaluation performed at our request over a one-month period from 2/91 through 3/91, claimant is totally disabled from his own reasonable occupation. He should be capable of performing non-physical work which would permit him to sit/stand as tolerated. Our efforts to assist him with rehabilitation have not been successful. He has not demonstrated to us that he has appropriate attitude/perseverance to embark on a legitimate education program to prepare him for alternate, more compatible employment.

ECF 000224.

In February, 1992, Aetna terminated Mein's LTD benefits, concluding that he "[could] no longer be considered totally disabled from any reasonable occupation...." ECF 000216. Mein appealed Aetna's decision. In July, 1992, Dr. Armstrong responded to a letter from Aetna that Mein's condition had deteriorated significantly in the past two years. ECF 000382. Dr. Armstrong stated that Mein "ha[s] total and complete restriction on any activity that would require bending, stooping, lifting, pushing, pulling, overhead work, extremes of heat, cold or moisture." *Id.* He also stated that Mein "will never, and let me emphasize never, return to any type of work for which he is presently qualified." *Id.* He also stated that Mein "could possibly be a classroom teacher." *Id.*

Aetna referred Dr. Armstrong's report to its physician, Dr. Galvin who responded that Mein was totally disabled from any occupation without extensive training. ECF 000025. Aetna concluded that Dr. Galvin's assessment "seem[ed] to refute the transferrable skills analysis previously done." *Id.* In August, 1992, Aetna found that "[Mein] remain[s] totally disabled from any reasonable occupation" and reinstated his LTD benefits, retroactive to February 1, 1992. ECF 000212 *Id.*

In March 1994, the Company sent Mein a letter notifying him that the Aetna insurance policy under which he received LTD benefits was terminated effective December 31, 1993, and, according to the terms of the policy, Aetna's liability to him would end December 31, 1994. ECF 000532. The letter also informed Mein that "the Company has established a self-funded long-term disability plan which will cover certain of those who are now receiving benefits from Aetna and who continue to be totally disabled after the Aetna benefits cease." ECF 000532. The new plan, named Pool Company Disabled International Employee Long–Term Disability Plan (Company Plan) was effective January 1, 1995. ECF 000532.

In September, 1994, the Company wrote Mein and informed him:

[I]n order that your benefits may continue, you must make formal application for coverage under the Pool Company Disabled International Employee Long Term Disability Plan. If you are approved for coverage under the Plan your coverage will begin January 1, 1995, thus preventing any interruption of your LTD benefits.

ECF 000524. Mein submitted the claim form stating that he could not engage in any gainful activity because it was too painful for him to sit through classes and too painful to perform physical labor. ECF 000521–23. In October, 1994, Dr. Armstrong also submitted an attending physician's statement in which

he stated that "pt. has been fully disabled since 1985 and there has been no significant change." ECF 000518. Under the "Prognosis" portion of the form Dr. Armstrong checked "NO" in answer to the question "Is the patient physically able to engage in any type of gainful employment?" *Id.* In a letter dated January 13, 1995, Pool notified Mein that:

> "[i]nitially, your application for the Pool Company Disabled International Employee Long–Term Disability Plan has been approved as of January 1, 1995. However, because there is still some question as to whether or not you meet the definition of "Total Disability" as defined in the Plan, we feel it is necessary to make a more prudent effort to confirm this. You will be contacted by an outside consultant who will arrange for you to be examined by an Independent Medical Examiner.... Upon receipt of the results of your independent medical exam, we will further review your continuing eligibility for [LTD] benefits under this Plan."

ECF 000502.

The Company Plan wrote to Dr. Armstrong in December 1994, and February 1995, requesting Mein's medical records. In response, Dr. Armstrong stated that he had changed his medical specialty and no longer had Mein's medical records. He also stated "[c]ertainly Mr. Mein's back and neck damage has and will keep him from pursuing any career or employment for which he has been trained." ECF 000491.

An independent medical evaluation of Mein was performed by Dr. Duane Messner on April 7, 1995. In his report dated April 12, 1995, Messner stated that "[i]t is my impression that this patient's present diagnoses are directly related to his industrial injury of 1981. At the present time, I do not think he is capable of returning to his former occupation or any work that requires any heavy lifting or excessive bending. For all practical purposes, the patient is permanently impaired secondary to his cervical and lumbar spondylosis." ECF 000458–459.

On May 1, 1995, Dr. Messner was requested to respond to the following inquiry. "Please include any inability or limitations to performing sedentary job duties." ECF 000451. On May 2, 1995, Dr. Messner responded "[i]f sedentary work doesn't require bending, squatting or lifting and is basically a sitting occupation, he *may be* capable of performing this type of work." ECF 000449 (emphasis in original).

On May 9, 1995, Pool Company advised Mein by letter that his LTD benefits were terminated stating, in part:

> It has been determined that you no longer meet the definition of totally disabled as provided in the Pool Company International Employee Long–Term Disability Plan.
>
> We agree with the finding in your medical records that you are not able to return to the type of work you were performing at the onset of your disability; however, there is indication in your records that your physical condition would permit some type of sedentary work.

ECF 000445.

In a June 2, 1995 letter, Mein appealed the LTD benefits denial. Mein, through legal counsel, submitted another letter on July 5, 1995, to which the Plan responded and invited Mein to submit additional information, including the results of a medical examination. ECF 000402. On August 2, 1995, Mein submitted a medical report in which Dr. John Aschberger concluded:

> Examination is consistent with radiological finding as well as the previous examinations as outlined in the records that he provides. There are limitations in motion and complaints of chronic pain. Exact determination of functional ability is difficult with the time span involved and the lack of recent physical therapy or treatment. However, it is apparent based on radiological findings and symptomatology that Mr. Mein will not return to heavy work category and is likely restricted at most to performance of a light work duty category at eight hours per day....
>
> Given his lengthy absence from work, he will at least require vocational assessment to determine whether he is employable at that work duty level. He may require some reeducation or further training to allow return to the work force.

ECF 000400–01. On August 10, 1995, the Plan denied Mein's appeal. Mein filed this action on May 9, 1996.

## II.

Pursuant to Fed.R.Civ.P. 12(b)(6), defendants move to dismiss plaintiff's state law claims for tortious bad faith refusal to pay benefits (claim one), intentional interference with a protected property interest (claim three), intentional or negligent infliction of severe emotional distress (claim four), and deceit (claim five) on the ground that these claims are preempted by ERISA. Defendants also move to strike Mein's jury demand. I will grant the motion to dismiss claims one, three, four and five and grant the motion to strike.

### A. *Fed.R.Civ.P. 12(b)(6)*

A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *Conley*, 355 U.S. at 45–46. All well-pleaded factual allegations, as opposed to conclusory allegations, are accepted as true, *see Ash Creek Mining Co.*, 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). All reasonable inferences must be liberally construed in the plaintiff's favor. *Weiszmann v. Kirkland & Ellis*, 732 F.Supp. 1540, 1543 (D.Colo.1990).

### B. *ERISA*

ERISA governs "employee benefit plan[s]." 29 U.S.C.A. § 1003(a). One form of employee benefit plan is an "employee welfare benefit plan." *Id.* § 1002(3). As applicable to this case, an "employee welfare benefit plan" is:

> any plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of sickness, accident, [or] disability....

*Id.* § 1002(1). Thus, I conclude that the Pool Company plan is an employee welfare benefit plan governed by ERISA.

■ The Company does not dispute Mein's contention that the plan at issue is an employee welfare benefit plan within the meaning of ERISA. The Company argues, however, that Mein's state claims are preempted by ERISA. I agree.

■ All state laws that "relate to" employee benefit plans are preempted by ERISA. 29 U.S.C.A. § 1144(a). The Supreme Court has interpreted the phrase "relate[d] to any employer benefit plan" broadly to include any law that has a "connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court has also held that ERISA preempts state common law tort and contract actions for improper processing of claims under ERISA regulated employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). After considering congressional intent, the Court determined that ERISA's preemption provision was broad enough to become the " 'sole power to regulate the field of employee benefit plans.' " *Id.* 481 U.S. at 46 (quoting 120 Cong.Rec. 29197 (1974) (statement of Rep. Dent)). However, state actions which affect plans in "too tenuous, remote, or peripheral a manner," will not be preempted as a law relating to the plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21; *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 583 (10th Cir.1991). "ERISA does not preempt claims that are only tangentially involved with a benefit plan." *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir.1991). When a state law " 'does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated.' " *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.*, 944 F.2d 752,

754 (10th Cir.1991) (quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985)).

■ The Tenth Circuit and this court have held that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation. *See e.g., Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1264–65 (10th Cir.1988) (employee's state law claims for breach of contract and negligent misrepresentation preempted by ERISA); *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1050–52 (10th Cir.1992) (employee's state law claim of estoppel preempted by ERISA); *Anglund v. American Tel. and Tel. Co.,* 828 F.Supp. 809, 812–14 (D.Colo.1993) (employee's state law claims for breach of contract, fraud, negligent misrepresentation, and estoppel preempted by ERISA). Also, claims for emotional distress are preempted. *Pitman v. Blue Cross and Blue Shield of Oklahoma,* 24 F.3d 118, 120 (10th Cir.1994). Thus, to the extent that Mein is attempting to assert his rights to benefits under the Plan, the state law claims are preempted by ERISA. For this reason, I conclude Mein's state law claims for tortious bad faith refusal to pay benefits (claim one), intentional interference with a protected property interest (claim three), intentional or negligent infliction of severe emotional distress (claim four), and deceit (claim five) are preempted by ERISA. Accordingly, I will grant defendants' motion to dismiss.

■ Moreover, courts have consistently held that extra-contractual damages are not recoverable under ERISA. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)(extra-contractual damages, including claims for mental and emotional distress and punitive damages, not recoverable against a fiduciary who has not processed claim in good faith). Thus, I will grant defendants' motion to dismiss Mein's claims for compensatory and punitive damages.

### C. *Right to jury trial under ERISA*

■ Defendants move to strike Mein's demand for a trial to jury on the remaining ERISA claims. I will grant the motion.

Mein brings his ERISA claims pursuant to ERISA section 502, 29 U.S.C. § 1132(a)(1)(B) which allows a plan participant to "recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Tenth Circuit has not determined whether there is a right to a jury trial under 29 U.S.C. § 1132(a)(1)(B). However, nine other federal circuits have held there is no such right because the remedy provided is equitable in nature. *See Sullivan v. LTV Aerospace and Defense Co.,* 82 F.3d 1251, 1259 (2d Cir.1996); *Borst v. Chevron Corp.,* 36 F.3d 1308, 1323–24 (5th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995); *Cox v. Keystone Carbon Co.,* 894 F.2d 647, 649–50 (3d Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *Daniel v. Eaton Corp.,* 839 F.2d 263, 268 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1566–67 (11th Cir.1987); *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1006–07 (4th Cir. 1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *In re Vorpahl,* 695 F.2d 318, 321–22 (8th Cir.1982); and *Wardle v. Central States Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 829–30 (7th Cir.1990), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

In *Zimmerman v. Sloss Equipment, Inc.,* 72 F.3d 822, 830 (10th Cir.1995), the Tenth Circuit did not reach the issue whether an ERISA plaintiff is entitled to a jury trial because the plaintiff had not raised the issue in the district court. However, the court characterized the issue as a "thorny" one.

Recently, in an ERISA action seeking recovery of severance benefits, Judge Kane held that plaintiffs were entitled to a jury trial pursuant to the Seventh Amendment of the United States Constitution. In a well reasoned opinion, he reviewed the holding in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80

(1989) which addressed ERISA in light of traditional principles of contract and trust law. *Firestone* acknowledged that pre-ERISA denial of benefits claims were governed by contract law. *Id.* 489 U.S. at 112–13. However, in deciding the standard of review to be conducted in an ERISA action for recovery of benefits alleged to have been improperly withheld, the Court concluded that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan '[c]onsistent with established principles of trust law.'" *Id.* 489 U.S. at 115.

In granting plaintiffs a jury trial, Judge Kane also relied on *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), where the Court reconfirmed its commitment to the right to a jury trial "where legal rights are at stake." *Id.* 494 U.S. at 565. In *Terry,* the plaintiff sought backpay as a remedy for his union's alleged breach of the duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 159(a).

In *Adams v. Cyprus Amax Mineral Co.,* 954 F.Supp. 1470 (D.Colo.1997) Judge Kane applied a two-part test in accordance with *Firestone* and *Terry,* to determine whether a plaintiff is entitled to a jury trial based on the nature of the action and the type of remedy sought. Based on the rationale and reasoning in *Adams,* I adopt its two-part test and employ it here.

First, I must determine "whether the benefit plan gave the administrator or fiduciary discretionary authority to determine eligibility benefits or to construe the terms of the plan." *Id.* at 1475. If it did, the action is viewed as one implicating the law of trusts enforceable only through equity. *Id.* at 1474. If the plan grants the administrator no discretion, the case must be seen as a traditional contract action and, thus, one at law regardless of the character of the overall action. *Terry,* 494 U.S. at 569.

Second, I look to the nature of the remedy sought. In *Terry,* the plaintiffs sought backpay in a sum certain. Generally, such damages are considered a legal remedy. *Id.* In contrast, restitutionary damages, injunctive relief, reinstatement of the policy, or continuing coverage are equitable remedies. *Id.* at 1476.

Here, paragraph 7.1 of the Plan provides, in pertinent part:

> The Company is designated the named fiduciary and Plan administrator.... The Company, acting through its Vice President, Human Resources shall have the exclusive right to interpret the Plan and to decide all matters arising thereunder including the right to remedy possible ambiguities, inconsistencies or omissions.

> . . .

> [T]he Company ... shall have the following powers and duties:

> . . .

> (3) to decide on questions concerning the Plan and the eligibility of any employee to participate in the Plan, in accordance with the provisions of the Plan....

Mtn. to Dismiss, Reply Brief Attachment p. 11. Under the first prong of the *Adams* test, I conclude that where, as here, the Plan gives the fiduciary discretionary authority, the action is equitable rather than legal.

Next, I look to the remedy sought. In his complaint, Mein seeks benefits due him under the Plan, retroactive to May 10, 1995, a declaration that future Plan benefits shall be paid to him when due under the terms of the Plan, compensatory damages including benefits, special and general damages, and punitive damages.

The principal remedies sought by Mein to which I find he is entitled, are restitutionary damages, injunctive relief, reinstatement of the policy and continuing coverage. These remedies are equitable in nature. *Adams* at 1476. Thus, under both prongs of the *Adams* test, Mein is not entitled to a jury trial. Accordingly, I will grant defendants' motion to strike jury trial demand.

### III.

#### *SUMMARY JUDGMENT STANDARD*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1318 (10th Cir.1997).

#### A. *Standard of review under § 1132(a)(1)(B)*

■ Although ERISA is a "comprehensive and reticulated" statute, *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), it does not set out the standard of review for actions under § 1132(a)(1)(B) challenging denial of benefits. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108–09, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Through trust law analysis, *Firestone* holds that a denial of benefits challenged under § 1132(a)(1)(B) is reviewed under an "abuse of discretion" standard if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Id.* 489 U.S. at 114–15. If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, the conflict must be weighed as a "factor in determining whether there is an abuse of discretion." *Id.* 489 U.S. at 115 *quoting* Restatement (Second) of Trusts § 187, Comment d (1959). In reviewing the decision to terminate Mein's benefits, I may consider only the arguments and evidence presented to the Vice–President, Human Resources when the decision

was made. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 378 (10th Cir.1992).

The Company Plan provided:

The Company, acting through its Vice President, Human Resources, shall have the exclusive right to interpret the Plan and to decide all matters arising thereunder, including the right to remedy possible ambiguities and omissions.

ECF 000548.

■ By its plain language, the Company Plan gives the Human Resources (HR) vice-president the right, *inter alia*, to determine benefits and to interpret the terms of the Plan. Hence, I must decide whether the Company Plan's decision to terminate Mein's LTD benefits was arbitrary or capricious. Also, since the Company Plan was self-funded by Pool Company, Inc., the HR vice-president, as a Pool Company, Inc. officer, had a direct financial incentive to terminate Mein's LTD benefits. Thus, he was operating under a conflict of interest. Under *Firestone*, this conflict of interest is a factor I weigh in determining whether the decision to terminate Mein's LTD benefits was an abuse of the HR vice-president's discretion. *Id.* The existence of a conflict of interest triggers a less deferential standard of review. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996). In the Tenth Circuit, the review of a decision made by a decision maker with a conflict is made under a "sliding scale" approach. Under this approach, I decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict. *Id.* Moreover, the Tenth Circuit consistently states the applicable standard as being "arbitrary and capricious" rather than "abuse of discretion." However, the court considers the difference a "distinction without a difference." *Id.* at 825 n. 1.

■ The Company Plan representative's decision to terminate benefits will be upheld unless the decision is: 1) arbitrary and capricious; 2) not supported by substantial evidence; or 3) erroneous on a question of law. *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 895 (10th Cir.1988). The decision to terminate benefits

must be upheld if it is a reasonable interpretation of the plan's terms and made in good faith. *Torix v. Ball Corp.*, 862 F.2d 1428, 1429 (10th Cir.1988).

## B. *Decision to terminate LTD benefits*

■ The parties agree, and I concur, that there are no genuine issues of material fact in dispute in this action. Thus, whether defendants' decision to terminate Mein's LTD benefits should be upheld or not is a matter of applying the undisputed facts to the applicable law.

In this case, the Company paid Mein LTD benefits from 1985 through 1994 under its Aetna LTD policy. The Company terminated the Aetna LTD policy effective December 31, 1993 and established a self-funded long-term disability plan. In March 1994, the Company informed Mein of the change in coverage and that their new plan would cover certain of those who were presently receiving benefits from Aetna and who continued to be totally disabled after the Aetna benefits ceased. ECF 000532. The Company Plan was effective January 1, 1995. ECF 000532.

In September, 1994, the Company wrote Mein and informed him:

> [I]n order that your benefits may continue, you must make formal application for coverage under the Pool Company Disabled International Employee Long Term Disability Plan. If you are approved for coverage under the Plan your coverage will begin January 1, 1995, thus preventing any interruption of your LTD benefits.

ECF 000524. Mein submitted the claim form stating that he could not engage in any gainful activity because it was too painful for him to sit through classes and too painful to perform physical labor. ECF 000521–23. On October, 1994, Dr. Armstrong also submitted an attending physician's statement in which he stated that "pt. has been fully disabled since 1985 and there has been no significant change." ECF 000518. Under the "Prognosis" portion of the form Dr. Armstrong checked "NO" in answer to the question "Is the patient physically able to engage in any type of gainful employment?" *Id.* In a letter dated January 13, 1995, Pool notified Mein that:

> "[i]nitially, your application for the Pool Company Disabled International Employee Long–Term Disability Plan has been approved as of January 1, 1995. However, because there is still some question as to whether or not you meet the definition of "Total Disability" as defined in the Plan, we feel it is necessary to make a more prudent effort to confirm this. You will be contacted by an outside consultant who will arrange for you to be examined by an Independent Medical Examiner.... Upon receipt of the results of your independent medical exam, we will further review your continuing eligibility for [LTD] benefits under this Plan."

ECF 000502.

The Company Plan wrote to Dr. Armstrong in December 1994, and February 1995, requesting Mein's medical records. In response, Dr. Armstrong stated that he had changed his medical specialty and no longer had Mein's medical records. He also stated:

> [A]pproximately one year ago when Mr. Mein had his last symptomatic episode with his back and neck, his MRI scan showed severe compromise at multiple levels. This scan was evaluated by several specialists who felt Mr. Mein should have surgery or risk the possibility of further irreversible spinal cord compromise. Due to financial constraints he was unable to follow these recommendations. He has, however, been very compulsive with his outpatient physical therapy regimen and at my last contact was controlled. "[c]ertainly Mr. Mein's back and neck damage has and will keep him from pursuing any career or employment for which he has been trained." ECF 000491.

At the end of 1994, the Company Plan reviewed Mein's application for LTD benefits. Internal documents reveal that under the Aetna LTD policy, Mein was receiving $1,940.85 per month and that the payments would not end until April 1, 2014, when Mein reached age 65. ECF 000508. Also, at ECF 00507, there is an undated, unsigned handwritten note which states:

> *Ed Mein*—Eligible—there is no medical support to cut him off at this time. How-

ever he recommends to send him for an IME + hire a private investigator.

Pursuant to the January 13, 1995 letter, the Company Plan sought and obtained an independent medical evaluation of Mein performed by Dr. Duane Messner on April 7, 1995. In his report dated April 12, 1995, Messner stated that:

> "[i]t is my impression that this patient's present diagnoses are directly related to his industrial injury of 1981. At the present time, I do not think he is capable of returning to his former occupation or any work that requires any heavy lifting or excessive bending. For all practical purposes, the patient is permanently impaired secondary to his cervical and lumbar spondylosis."

ECF 000458–459. On May 1, 1995, the Company Plan asked Dr. Messner to respond to the following inquiry. "Please include any inability or limitations to performing sedentary job duties." ECF 000451. On May 2, 1995, Dr. Messner responded "[i]f sedentary work doesn't require bending, squatting or lifting and is basically a sitting occupation, he *may be* capable of performing this type of work." ECF 000449 (emphasis in original).

On May 9, 1995, Pool Company advised Mein by letter that his LTD benefits were terminated stating, in part:

> It has been determined that you no longer meet the definition of totally disabled as provided in the Pool Company International Employee Long–Term Disability Plan. We agree with the finding in your medical records that you are not able to return to the type of work you were performing at the onset of your disability; however, there is indication in your records that your physical condition would permit some type of sedentary work.

ECF 000445.

In a June 2, 1995 letter, Mein appealed the LTD benefits denial. Mein, through legal counsel, submitted another letter on July 5, 1995, to which the Plan responded and invited Mein to submit additional information, including the results of a medical examination. ECF 000402. On August 2, 1995, Mein submitted a medical report, dated July 24,

1995, in which Dr. John Aschberger concluded:

> Examination is consistent with radiological finding as well as the previous examinations as outlined in the records that he provides. There are limitations in motion and complaints of chronic pain. Exact determination of functional ability is difficult with the time span involved and the lack of recent physical therapy or treatment. However, it is apparent based on radiological findings and symptomatology that Mr. Mein will not return to heavy work category and *is likely restricted at most to performance of a light work duty category at eight hours per day* ....
>
> *Given his lengthy absence from work, he will at least require vocational assessment to determine whether he is employable at that work duty level.* He may require some reeducation or further training to allow return to the work force.

ECF 000400–01. (emphasis added). On August 10, 1995, the Plan denied Mein's appeal.

The definition of "total disability" is the same in all substantive matters in the Aetna policy and the Company Plan:

> "[t]otal disability" or "totally disabled" means, during the first twenty-four months of any one period of disability, that the employee is unable, solely because of disease [or] accidental bodily injury ... to work at his own occupation; and thereafter during the continuance of such period of disability, that the employee is unable solely because of disease [or] accidental bodily injury, to work at any reasonable occupation.

Aetna policy, ECF 000423; Company Plan, ECF 000539. Also, both plans define "reasonable occupation" as follows:

> "[r]easonable occupation" means any gainful activity for which the employee is, or may reasonably become fitted by education, training or experience. However, work under an approved rehabilitation program will not be considered a reasonable occupation.

Here, the initial letter from the Company Plan denying LTD benefits states that the denial was based on an "indication in your

records that your physical condition would permit some type of sedentary work." ECF 000445. The plan administrator, HR vice-president L.E.Dupre, (Dupre) denied Mein's appeal stating that "the report from Dr. Aschberger appears to support the earlier conclusion of Dr. Messner, the independent medical examiner ... that Mr. Mein is capable of working at a reasonable occupation." ECF 000395.

A plain reading of the physicians' reports does not support the Company Plan's conclusion that Mein was no longer totally disabled. Dupre's statement that Dr. Aschberger's report appears to support Dr. Messner's conclusion that Mein "is capable of working at a reasonable occupation," is inaccurate for two reasons. First, Dr. Messner stated nothing more than Mein *"may be* capable of some sedentary work." Second, Dr. Aschberger's report concluded that at most Mein could perform a light work duty category at eight hours per day. Dr. Aschberger went on to say that given Mein's lengthy absence from work, Mein would "at least require vocational assessment to determine whether he is employable *at that work duty level."* ECF 000401 (emphasis added). It is undisputed that no vocational assessment was performed after Dr. Aschberger's report. Thus, based on Dr. Aschberger's report, no determination was made whether Mein was employable in a light work duty category.

A plain reading of the reports of Dr. Messner and Dr. Aschberger does not support the Company's conclusion that Mein was capable of working at a reasonable occupation. Simply put, the reports do not say what the conflicted plan administrator says they say. Therefore, I conclude that based on the evidence before him in 1995, without the benefit of a current vocational assessment, the plan administrator's decision to terminate Mein's LTD benefits was unreasonable, arbitrary, and capricious. Nor was the decision based upon substantial evidence. Accordingly, I will grant Mein's motion for summary judgment on claim seven and deny defendants' motion for summary judgment on claim seven.

## C. *Declaratory relief—claim six*

The parties cross-move for summary judgment on Mein's claim six in which he seeks a declaration that future Company Plan benefits shall be paid to him when due under the terms of the Company Plan. He also seeks a declaratory order establishing the rights, duties, and liabilities of the parties under the terms of the Company Plan. Consistent with granting Mein's motion for summary judgment on claim seven and denying defendants' cross-motion, I will declare that he is entitled to payment of long-term disability benefits retroactive to May 10, 1995, and continuing until such time as it is determined, in accordance with the terms of the Pool Company Disabled International Employee Long–Term Disability Plan and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* that he is no longer totally disabled.

## D. *Breach of fiduciary duty*

Mein brings two separate claims for breach of fiduciary duty. Claim two alleges that after defendant's duty to pay benefits arose, such benefits were no longer the property of defendants but were held by defendants for the sole benefit and use of plaintiff, thereby creating a fiduciary relationship between defendants and plaintiff. In claim eight, Mein brings a breach of fiduciary duty claim under 29 U.S.C. § 1104(a) pursuant to ERISA, 29 U.S.C. § 1132(a)(3). In denominating claim eight an ERISA claim, I assume that claim two is a common law claim for breach of fiduciary duty.

### 1. *claim two—breach of fiduciary duty*

As I discussed at section I(B), *supra,* common law claims are preempted by ERISA. Mein's claim two for breach of fiduciary duty is akin to claim one for bad faith refusal to pay benefits and claim five for deceit. As such, claim two is also preempted. Thus, I will grant summary judgment in favor of defendants and deny plaintiff's motion for summary judgment on claim two.

### 2. *claim eight—breach of fiduciary duty under ERISA*

ERISA Section 1132(a)(3) provides:

A civil action may be brought by a participant ... (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Defendants move for summary judgment on this claim arguing that pursuant to § 1109, any recovery for breach of fiduciary duty must be delivered to the plan and not to a plan participant such as Mein. Mein argues that pursuant to *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), he is entitled to pursue an action under § 1132(a)(3)(B) and seek, *inter alia,* equitable remedies of compensatory damages and punitive damages. I disagree.

In *Varity,* the Supreme Court stated that "where Congress elsewhere provide[s] adequate relief for a [participant]'s injury, there will likely be no need for further equitable relief, [and] such relief normally would not be appropriate." *Id.* 116 S.Ct. at 1079. The plaintiffs in *Varity* could not proceed under § 1132(a)(1) because they were no longer members of the plan at issue. They also could not proceed under § 1132(a)(2) because that provision does not provide a remedy for individual beneficiaries. In a narrow ruling, the *Varity* court granted plaintiffs relief pursuant to § 1132(a)(3) because denying plaintiffs any remedy was not consistent with the Act's purposes and pre-existing trust law. *Id.* In contrast, Mein, as a plan participant, has available the remedy of enforcing the terms of the Company plan. Accordingly, I will grant defendants' motion for summary judgment on claim eight and deny Mein's cross-motion.

### E. Attorney's Fees and costs

The decision whether to award attorney's fees is discretionary. *See* 29 U.S.C. § 1132(g)(1); *Downie v. Independent Drivers Ass'n Pension Plan,* 945 F.2d 1171, 1172 (10th Cir.1991). In determining whether to award attorney's fees and costs, I may consider, *inter alia,* the following factors:

1. the degree of the opposing parties' culpability or bad faith;

2. the ability of the opposing parties to personally satisfy an award of attorney's fees;

3. whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances;

4. whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

5. the relative merits of the parties' positions.

*Id.* at 1172 quoting *Gordon v. U.S. Steel Corp.,* 724 F.2d 106, 109 (10th Cir.1983).

Mein received LTD benefits for more than ten years under an Aetna policy purchased by the Company. Effective in 1994, the Company canceled its Aetna policy and became self-insured, thus assuming the responsibility of paying LTD benefits for those plan participants who were eligible under the terms of the Company Plan. There is evidence in the record that the goal of the eligibility reviewers was to find a way to "cut off" Mein's LTD benefits. ECF 00507 ("*Ed Mein*—Eligible—there is no medical support to cut him off at this time....."). Thus, there is some evidence of culpability on the part of the defendants. Also, if defendants are ordered to pay Mein's attorney fees, it may serve as a deterrent to others in similar circumstances. However, this action does not benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA. Mein prevails on claims six and seven to recover LTD benefits. However, he also brought several state law claims for which there was no legal basis. Under these circumstances, and after consideration of the *Gordon* factors, I will grant Mein's motion for attorney fees and costs, to be allocated to his successful prosecution of claims six and seven.

### F. Pre-judgment interest

Mein seeks prejudgment interest from May 10, 1995, until the date of judgment. Second Amended Complaint, p. 11, ¶ 5. An award of prejudgment interest is

within the sound discretion of the court. *Biava v. Insurers Administrative Corp.,* 48 F.3d 1231, 1995 WL 94461 (Unpublished), 1995 WL 94461 (10th Cir.), *cert. denied,* 516 U.S. 1021, 116 S.Ct. 594, 133 L.Ed.2d 514 (1995) citing *Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692 (7th Cir.1991). However, a person wrongfully denied the use of ERISA plan money is not made whole without the award of interest. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984). *See also Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996); *Johnson v. Dayco Products, Inc.,* 973 F.Supp. 1255, 1266 (D.Kan.1997). In determining the rate of prejudgment interest, the Court should look to state law. *Biava,* 48 F.3d 1231, 1995 WL 94461 *5 citing *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.1981).

■ Based on the foregoing, in my discretion, to make Mein whole, I will award prejudgment interest. Mein is a resident of Denver, Colorado. Pool Company, Inc. is a Texas corporation with its principle place of business in Harris County, State of Texas. Thus, it is not immediately apparent which state's prejudgment interest statute should apply. Accordingly, I will defer ruling on the rate of prejudgment interest until the parties brief the issue.

Accordingly, IT IS ORDERED that:

1. defendants' motion to dismiss is GRANTED as to claims one, three, four, and five;

2. defendants' motion to strike jury trial demand is GRANTED;

3. defendants' motion for summary judgment is GRANTED as to claims two and eight;

4. defendants' motion for summary judgment is DENIED as to claim six;

5. defendants' motion for summary judgment is DENIED as to claim seven;

6. plaintiff's motion for summary judgment is DENIED as to claims two and eight and GRANTED as to claim seven;

7. plaintiff's motion for summary judgment is GRANTED as to claim six. IT IS DECLARED that plaintiff is entitled to and

shall have judgment for long-term disability benefits retroactive to May 10, 1995, and continuing until such time as it is determined, in accordance with the terms of the Pool Company Disabled International Employee Long–Term Disability Plan and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* that he is no longer totally disabled.

Further, IT IS ORDERED that:

8. plaintiff's motion for attorney fees and costs is GRANTED as allocated to claims six and seven;

9. plaintiff's motion for prejudgment interest is GRANTED; and

10. plaintiff shall file by January 21, 1998, a bill of costs, his brief addressing the rate of prejudgment interest to be employed, and brief and affidavits in support of the attorney fee award. Defendants shall have 10 days to respond.