Kellie **KLOVER**, Susan Klover, and Steven Klover, Plaintiffs,

v.

**ANTERO HEALTHPLANS a/k/a Mutual of Omaha of Colorado, Inc., a Colorado corporation, f/k/a Mutual of Omaha and Primera, Inc., f/k/a Mutual of Omaha of Colorado and Primera, Inc., f/k/a Exclusive Healthcare of Colorado, Inc.; Mutual of Omaha Health Plans, Inc., a Nebraska corporation; Mutual of Omaha Insurance Company, a Nebraska corporation; Kaiser–Hill Company, LLC, a Colorado company; and R–Flex Rocky Flats Flexible Benefits Plan, Defendants.**

No. Civ.A. 98–B–920.

United States District Court, D. Colorado.

Sept. 24, 1999.

---

1004

Bradley A. Levin, Stephen E. Abrams, Breit, Bosch, Levin & Coppola, P.C., Denver, CO, Donald E. Johnson, The Law Firm of Donald E. Johnson, Pine Junction, CO, for plaintiffs.

John R. Trigg, Edward C. Stewart, Wheeler, Trigg & Kennedy, P.C., Denver, CO, Gerard V. Reardon, John E. Schembari, Kutak Rock, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Three of the five Defendants, Antero Healthplans a/k/a Mutual of Omaha of Colorado, Inc. ("Antero"), Mutual of Omaha Health Plans, Inc. ("Health Plans"), and Mutual of Omaha Insurance Company ("Mutual of Omaha") (collectively "third party administrators" or "Defendants"), move to dismiss the claims against them pursuant to Rule 12(b)(6). Plaintiffs, Kellie Klover, Susan Klover, and Steven Klover (collectively "the Klovers" or "Plaintiffs"), oppose this motion. For the reasons set forth below I grant in part and deny in part Defendants' motion. Jurisdiction is proper in this Court pursuant to the Employer Retirement Insurance Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., original federal question jurisdiction, 28 U.S.C. §§ 1331 & 1441(a), and supplemental jurisdiction, 28 U.S.C. §§ 1367 & 1441(c).

### I. Background

In 1982, Plaintiff Steven Klover began working for Rockwell International Corporation ("Rockwell") at the Rocky Flats Environmental Technology Site ("Rocky Flats") in Golden, Colorado. Rockwell managed the environmental decontamination program at Rocky Flats pursuant to a contract with the United States Depart-

ment of Energy ("DOE"), the federal agency responsible for oversight of Rocky Flats. Between 1982 and 1989, Mr. Klover and his family participated in, and received benefits under, Rockwell's self-funded, health benefits plan known as Plan Number 676 (the "Plan").

On September 22, 1990, Rockwell agreed to transfer its responsibilities under the contract to a new contractor effective January 1, 1990. Shortly thereafter, the DOE named EG & G Rocky Flats, Inc. ("EG & G") as Rockwell's successor. Pursuant to a three-party transfer agreement between Rockwell, DOE, and EG & G, executed December 29, 1989, EG & G assumed all of Rockwell's assets relating to the company's Rocky Flats division and all of Rockwell's liabilities relating to the Rocky Flats' operation. EG & G, therefore, became a successor sponsor of the Plan. Mr. Klover worked for EG & G from January 1, 1990 through June 30, 1995, during which time he continued to participate in the Plan.

As a result of workforce restructuring and layoffs beginning in 1992, the number of non-DOE employees at Rocky Flats decreased. As part of its workforce restructuring plan, the DOE established a Displaced Workers Program ("DWP") entitling employees of EG & G to participate in the Plan even after their termination. Management of the environmental decontamination program at Rocky Flats changed hands again on July 1, 1995. Pursuant to a three-party transfer agreement between EG & G, DOE, and Kaiser–Hill, executed June 30, 1995, Kaiser–Hill assumed EG & G's health benefits obligations and agreed to provide benefits to employees and individuals "otherwise entitled to benefits previously paid by EG & G...." (Transfer Agreement of 6/30/95 at 6–7). Kaiser–Hill, as the Plan Sponsor and Plan Administrator, hired several companies to assist in processing claims and offering an HMO network under the Plan. These companies included, among others, third-party administrators Antero and Mutual of Omaha. Antero subcontracted some of its ad-

ministrative service duties to Health Plans. (Rembold Affidavit).

As a part of continuing workforce decreases, Mr. Klover accepted voluntary termination in June 1995 and, therefore, never worked directly for Kaiser–Hill. Mr. Klover was, however, a displaced worker eligible to continue participation in the Plan by virtue of the DWP. Therefore, the Klovers continued to participate after Mr. Klover's voluntary termination, although they enrolled in a different type of health insurance effective July 1, 1995. The Klover's allege that representatives of the third party administrators informed them that their new coverage was materially identical to their previous coverage. (Complaint ¶ 15).

Kellie Klover, Steven Klover's daughter, underwent orthopedic surgery on October 16, 1996. Despite alleged pre-approval of the surgery and post-operative services, Defendants denied the Klovers' benefits claim on December 13, 1996, stating: "Our records indicate that we did not receive your coupon or premium payment due October 1, 1996. Your coverage has been terminated effective October 1, 1996." (Complaint ¶ 20). The Klovers deny that they failed to pay their October 1996 premium in a timely manner. They appealed Mutual of Omaha's decision, but Kaiser–Hill denied the appeal on December 23, 1996. (Complaint ¶ 21). The Klovers commenced this action on February 27, 1998 in the District Court of Adams County, Colorado. The Klovers alleged seven claims against the third party administrators and three claims against Kaiser–Hill. All claims were derived from the common law of Colorado. Defendants removed to this Court on April 24, 1998, relying on ERISA as a basis of subject matter jurisdiction.

On December 7, 1998, I issued an order dismissing all of the Klovers' claims against all Defendants as preempted by ERISA. The Klovers filed a motion for reconsideration, and on January 27, 1999, I partially granted this motion. I held that

only the Klovers' breach of contract claim, premised on "substantial compliance," remained viable. I further allowed the Klovers to file an amended complaint on or before February 10, 1999. The Klovers filed such an amended complaint, and made the following claims against all five current Defendants including the third party administrators, Kaiser–Hill, and the Plan:

(1) Breach of Contract;

(2) 29 U.S.C. § 1132(a)(1)(B)—claim for ERISA benefits;

(3) 29 U.S.C. § 1132(a)(3)—promissory estoppel; and

(4) 29 U.S.C. § 1132(a)(3)—equitable relief.

The three third party administrators filed a motion to dismiss this amended complaint on March 3, 1999.

## II.

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999).

Rule 12(b) provides that if matters outside the complaint are presented to and not excluded by the court, it should treat the motion to dismiss as a summary judgment motion. Rule 12(b); *see Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Foremaster v. City of St. George,* 882 F.2d 1485, 1491 (10th Cir.1989). Failure to convert a motion to dismiss so postured to a motion for summary judgment under Rule 56 is re-

versible error. *See Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). Typically, if I decide to convert a Rule 12(b)(6) motion into a Rule 56 motion, I must provide the parties with notice to avoid unfair surprise. Nevertheless, "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.1987) *cert. denied* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) (citing *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986)). The Defendants' Motion to Dismiss references materials outside of the pleadings, such as its earlier motion for summary judgment and accompanying exhibits. Furthermore, in the Plaintiffs' response in opposition to Defendants' Motion to Dismiss, Plaintiffs attach documents. Defendants reply also attaches exhibits. Consequently, because both parties reference materials outside the pleadings, I will treat the Defendants' motion to dismiss as one for summary judgment to the extent that the documents attached are relevant to the specific claims. Because both parties have actually attached such documents they are on notice that I may treat this as a motion for summary judgment. *See Wheeler,* 825 F.2d at 260. Consequently, I need not give formal notice of conversion. *See id.* The Klovers' Claims 1 and 3 are disposed of as a matter of law and are not affected by the attached documentation, therefore I will analyze these claims under Rule 12(b)(6) standards.

## III.

The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. The non-moving party has the burden of showing that issues of undetermined material fact exist. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are in-

sufficient, *see White* at 360 (citations omitted), as are conclusory assertions that factual disputes exist. *See Anderson,* 477 U.S. at 247–248, 106 S.Ct. 2505.

## IV.

 The Klovers' first claim is for breach of contract. They allege that Defendants breached the insurance policy by not paying benefits. In partially granting the Klover's motion for reconsideration on this claim, I relied on *Peckham v. Gem State Mutual of Utah,* 964 F.2d 1043 (10th Cir.1992). There, the Tenth Circuit considered whether ERISA preempted the state common law doctrine of substantial compliance. The Tenth Circuit held that this doctrine was not preempted by ERISA. *See id.* at 1052.

> ERISA is concerned with state law doctrines that serve to modify a plan because such doctrines could destabilize the plan as well as subject it to conflicting state regulation. However, these concerns apply only where the potential modification is material. By definition, the doctrine of substantial compliance does not materially modify a plan, but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract.... Thus, ERISA does not preempt the state common law doctrine of substantial compliance.

*Id.* Thus, I decided that despite criticism from other circuits, *Peckham* is binding in the Tenth Circuit. *See, e.g., Phoenix Mutual Life Ins. Co. v. Adams,* 30 F.3d 554, 560 (4th Cir.1994) ("The Tenth Circuit's reliance on the fact that state substantial compliance law does not appear to 'modify' the ERISA plan is unduly restrictive in light of the Supreme Court's language in *Pilot Life....* "). I went on to hold that the doctrine of substantial compliance was subsumed within the Klovers' breach of contract claim and therefore that claim survived. However, upon receipt of the Klovers' amended complaint and further

consideration of this issue, I grant the motion to dismiss the Klovers' claim for breach of contract.

In the "General Allegations" section of their amended complaint, the Klovers' state that they relied on the representations of the third party administrators concerning the amount needed to pre-pay expenses. The Klovers' allege,

> A Mutual of Omaha representative advised the Klovers to send a check in the amount of $582.14 to pre-pay coverage through the end of October 1996. The Klovers did this, and, by their actions, substantially complied with the requirements for payment of premiums.

(Amended Complaint, ¶ 25). The Klovers go on to allege that despite this "substantial compliance," the Defendants refused to pay existing and future medical bills.

The allegations specific to the breach of contract claim are comprised only of the following paragraphs:

> 32. The policy under which the Klovers were insured constitutes a contract between them and Defendants.
>
> 33. By virtue of Defendants' actions, as described above, Defendants breached their contract with the Klovers. Moreover, the breach was willful and wanton.
>
> 34. As a result of said breach, the Klovers have suffered damages in an amount to be provided at trial.

(Amended Complaint). The Klovers' substantial compliance is not expressly relied upon or referenced in this typical, common law breach of contract claim.

 For breach of contract in Colorado, a party must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; and (3) failure to perform the contract by the defendant. *See Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1057 (Colo.1992). "The 'performance' element in a breach of contract action means 'substantial' performance." *Id.* This is the concept that I relied upon when I held that substantial compliance was subsumed within the Klo-

vers' breach of contract claim and therefore survived. *See Klover v. Antero Health Plans,* Civil Action No. 98–B–920, January 27, 1999.

In the Tenth Circuit, state law claims, such as breach of contract, are preempted by ERISA. In dismissing a state law breach of contract claim as preempted by ERISA, the Supreme Court has noted:

> Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.... The conclusion that § 502(a) was intended to be exclusive is supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, 1947 (LMRA).

*Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court concluded that the contract claims were precluded because "ERISA's civil enforcement remedies were intended to be exclusive." *Id.* at 54, 107 S.Ct. 1549.

*Peckham* does not change the well-founded proposition that state causes of action and remedies are preempted by ERISA. *Peckham,* instead, stands for the narrow proposition that the state law *doctrine* of substantial compliance is not preempted. However, this Circuit's recognition of the application of a state law doctrine in an ERISA context does not lead to the conclusion that state causes of action, clearly preempted by controlling law, survive. A close reading of *Peckham* does not contradict this conclusion.

*Peckham* involved a dispute over the interpretation of an employee welfare ben-

efit plan, subject to ERISA, and its provision for adding beneficiaries. The Plaintiff in that case argued that, although she was technically late in attempting to place her child on her policy, she "substantially complied" with the timing requirements. In resolving the dispute, the court applied the doctrine of substantial compliance. The court found that the Plaintiff did not substantially comply with the provisions. The court elucidated that the doctrine of substantial compliance is "a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract." *Id.* at 1052. The court concluded that application of the state doctrine was not precluded by ERISA.

However, the *Peckham* court never states that in utilizing this doctrine it allowed the plaintiff to assert a state common law breach of contract claim. Instead, it allowed the plaintiff to argue entitlement to coverage for her son by virtue of her substantial compliance. Indeed, the Tenth Circuit in *Peckham* cites *Pilot Life* and its broad preemption rule with approval:

> *Pilot Life* made it clear that state laws providing for damages for *tortious breach of contractual duty*, emotional distress, and punitive damages "relate to" an ERISA plan and are therefore preempted ... In the wake of *Pilot Life,* as well as under the common-sense meaning of "relating to," it cannot validly be argued that state laws authorizing damages for nonpayment of claims do not "relate to" an ERISA plan.

*Id.* at FN3 (emphasis added). Furthermore, cases subsequent to *Peckham* have reaffirmed that breach of contract cases are preempted by ERISA. In *Mein v. Pool Co. Disabled Internat'l Employee Long Term Disability Benefit Plan,* I noted that, "[t]he Tenth Circuit and this court have held that ERISA preempts state law claims, based on breach of contract ... Thus, to the extent that Mein is attempting to assert his rights to benefits under the Plan, the state law claims are preempt-

ed by ERISA." *Mein,* 989 F.Supp. 1337, 1345 (D.Colo.1998).

■ In making a state breach of contract claim based, albeit loosely, on the state doctrine of substantial compliance, the Klovers cannot circumvent the established rule that breach of contract claims are preempted by ERISA. It is the law in the federal circuits that ERISA preempts common law breach of contract claims. *Peckham* stands for the narrow proposition that the doctrine of substantial compliance may be applied to determine if plaintiffs have substantially performed their obligations. Thus, under the authority of *Peckham,* the Klovers may request that I apply this doctrine to their claim for benefits under ERISA. Or, this state law doctrine may be employed to address the Defendants' defense that "Plaintiffs' claims are barred by their own breach or breaches of contract." (Answer to Amended Complaint, Defense ¶ 39). However, *Peckham* cannot be read to permit utilization of the state doctrine of substantial compliance as a means to circumvent ERISA preemption of a claim for breach of contract. Therefore, I grant the Rule 12(b)(6) motion to dismiss the Klovers' breach of contract claim because, even accepting all of the Klovers' allegations as true, it fails to state a claim upon which relief can be granted.

**V.**

■ The Klovers' second claim for relief is brought under ERISA, 29 U.S.C. § 1132(a)(1)(B). The Klovers claim that they are entitled to recover all of the past and future benefits allegedly due them in association with Kellie Klover's surgery. This ERISA section states, in relevant part:

§ 1132. Civil Enforcement

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

The third party administrators do not dispute that the Klovers may be able to state a claim under this section. However, they argue that, as third party administrators, they are improper parties to such a lawsuit involving a claim for benefits under the Plan.

The third party administrators, Antero, Health Plans, and Mutual of Omaha, are not "Plan Administrators" nor are they "Plan Sponsors." These are terms of art defined within each plan. ERISA's definition section states that the term "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). The Defendants and the Plaintiffs both reference and attach descriptions of the Plan. The Summary Plan Description, attached as Exhibit 1 to Defendant Kaiser–Hill's Supplement in Support of its Motion for Summary Judgment, defines the "Claim Administrator" as Mutual of Omaha. (Summary Plan Description, p. 55). In another section entitled, "Compliance with the Employee Retirement Income Security Act of 1974," the Plan Description gives a list of specifics. It states that the formal name of the Plan is "The Kaiser–Hill Team Group Coverage Plan." It further states that the Claim Administrator is Mutual of Omaha; the Plan Sponsor is Kaiser–Hill Company; and the Plan Administrator is Kaiser–Hill Company. (Summary Plan Description, p. 59). Likewise, the Antero Summary Plan Description, attached as Exhibit 2 to Defendant Kaiser–Hill's Supplement in Support of its Motion for Summary Judgment, states that the Plan Administrator is Kaiser–Hill, and the Claims Administrator is Antero. (Antero Plan Description, p. 66). Both of the plans designate Kaiser–Hill as the "plan administrator."

In *Kunz v. Colorado Ass'n of Soil Conservation Districts Medical Benefits Plan*, 840 F.Supp. 811 (D.Colo.1994), I held that a plaintiff could not bring a 29 U.S.C. § 1132(a)(1)(B) claim against a third-party administrator:

> AHCAI is the PLAN's third-party administrator as defined by section 3(16) of ERISA, 29 U.S.C. § 1002(6). "ERISA provisions providing for recovery against the 'plan' cannot be used to recover against the 'plan administrator' because the terms 'plan' and 'plan administrator' refer to two entirely distinct actors ... [and] are terms of art". ... Accordingly, AHCAI and the PLAN are separate entities. Section 1132(a)(1)(B) contains no provision which would entitle [the plaintiff] to recover from any entity other than the PLAN for the alleged non-payment of benefits. Therefore, as a matter of law, [the plaintiff] cannot sustain a claim against AHCAI pursuant to 29 U.S.C. § 1132(a)(1)(B) for recovery of such benefits.

*Id.* at 812 (citing *Walter v. Internat'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315 (10th Cir.1991)). For this reason, I granted the defendant third party administrators' 12(b)(6) motion to dismiss.

The Klovers cite cases from other circuits allowing 29 U.S.C. § 1132(a)(1)(B) claims against "Plan Administrators." (Opposition, pp. 8–10). However, the term "Plan Administrator" is a term of art defined under a relevant plan. In the Summary Plan Descriptions, Kaiser–Hill, a named defendant in this action but not a party to this motion, is consistently labeled as the "Plan Administrator." The third party administrators are titled "Claim Administrators," separate and distinct from "Plan Administrators."

Antero, Health Plans, and Mutual of Omaha are third-party administrators or claim administrators. No provision of 29 U.S.C. § 1132(a)(1)(B) would entitle the Klovers to recover from the third party administrators for non-payment of benefits. The Klovers claim for benefits may remain viable against proper defendants, but because the third party administrators

are the only defendants bringing this motion, I need not address this issue. The Plan descriptions as well as referenced affidavits show that the third-party administrators must be granted summary judgment on this claim as no genuine issue of material fact exists and the third party administrators are entitled to judgment as a matter of law.

## VI.

█ The Klovers' third claim seeks equitable relief under ERISA, 29 U.S.C. § 1132(a)(3). The Klovers allege that in purchasing the coverage under the Plan, they relied upon the Defendants' representations that it was identical to the family's previous coverage, which included benefits for home health care. (Amended Complaint, ¶ 39). The Klovers also allege that the defendants accepted late payments and represented that a check for a specified amount of money would be enough to prepay coverage. Additionally, the Klovers allege that the defendants preapproved the contested surgery. The Klovers claim that, by these actions, the Defendants should be estopped from refusing to pay benefits. The Klovers also seek a declaration that the Defendants are obligated to pay these costs.

Section 1132(a)(3) states, in relevant part:

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

I grant summary judgment of this claim because the Plaintiffs have already made a claim for "appropriate relief" under ERISA in Claim 2, and this claim remains viable against the non-moving Defendants, Kaiser–Hill and the R–Flex Rocky Flats Flexible Benefits Plan.

The Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), addressed the relief authorized by 29 U.S.C. § 1132(a)(3): "the statute authorizes 'appropriate' equitable relief. We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.' " *Id.* at 515, 116 S.Ct. 1065 (citing *Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. 1549). The Court concluded that relief authorized by this section is limited.

Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id.* I have enforced this rule in this district. *See Mein*, 989 F.Supp. 1337. In *Mein* I granted the defendants' motion for summary judgment on the plaintiff's claim for equitable relief pursuant to section 1132(a)(3) because the plaintiff, "as a plan participant, has available the remedy of enforcing the terms of the Company plan." *Id.*

Similarly, the Klovers have brought a claim for relief under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). In their brief, they concede that, "as an *alternative* to Plaintiffs' claims for breach of contract and wrongful denial of benefits under the terms of the plan, Plaintiffs allege that, based on the conduct and statement of [the third party administrator's] representatives, upon which the Klovers relied, Defendants are estopped ..." (Opposition Brief, p. 11). In essence, the Klovers are making an equitable, alternative claim for benefits in Claim 3 in order to obtain the same remedy as that sought in Claim 2. Although I granted summary judgment in favor of the third party administrators on Claim 2, the Klovers maintain the potential ability to receive an award of benefits against the non-moving Defendants. Indeed, the Klovers have

sought such relief in Count II of their action. Where, as here, plaintiffs have the ability to receive other relief under ERISA, there is no need for equitable relief and such relief is no longer "appropriate." Thus, I grant the Rule 12(b)(6) motion to dismiss the Klovers' claim for promissory estoppel under 29 U.S.C. § 1132(a)(3).

### VII.

■■■ The Klovers' final claim is also brought pursuant to 29 U.S.C. § 1132(a)(3). The Klovers allege that under the Displaced Workers Program ("DWP"), participants were entitled to receive notice of their rights to continuation coverage under COBRA for the eighteen months following termination. However, they allege that "defendants" did not provide this required notice. (Amended Complaint, ¶ 47). Pursuant to section 1132(a)(3), the Klovers claim that they are entitled to appropriate equitable relief to address the failure to give notice. Specifically they request a judicial declaration that their coverage was still in force at the time of Kellie Klover's surgery. This claim appears to seek "appropriate" equitable relief apart from the award of benefits already addressed in Claim 2.

The pleadings and attached documents raise genuine issues of material fact with regard to the third party administrators' duties regarding the DWP. The Defendants point to the Summary Plan Description attached as Exhibit 1 to the Plaintiffs' Opposition. In a section entitled "Cobra Group Health Coverage Continuation," the description states that, "the Plan Administrator will send you or your dependent written notice of the continuation right." (Summary Plan Description, p. 52). The third party administrators are defined as "Claims Administrators" rather than "Plan Administrators." Thus, the Plan does not seem to require action by Defendants in relation to the DWP. However, the Klovers' point to the deposition of Ms. Elenbaas, an apparent Kaiser–Hill representative, for the contention that the third party administrators were the administrators of the entire DWP and in charge of sending the reminder letters to the Klovers. (Elenbaas Deposition, pp. 28, 93, 133–136).

Because the parties have raised genuine issues of material fact concerning the responsibilities of the third party administrators in regard to the DWP and the notice letters, I cannot grant summary judgment on this final claim.

### VIII.

■■■ Both parties have raised arguments concerning the award of attorney's fees pursuant to 29 U.S.C. § 1132(g). This section states, in relevant part:

(1) In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Thus, the decision to award or deny attorney fees under ERISA is within my discretion. *See Pratt v. Petroleum Production Management Inc. Employee Sav. Plan & Trust,* 920 F.2d 651, 658 (10th Cir.1990).

The Tenth Circuit has developed factors for determining whether attorneys fees under this section are appropriate:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Downie v. Independent Drivers Ass'n Pension Plan,* 945 F.2d 1171, 1172 (10th Cir. 1991) (citing *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978)). Based upon the above factors, I choose not to award attorney's fees to either party in this action. I find no culpability or bad faith in either the motion to dismiss or the opposition to

this motion. I find no other basis on which to award fees.

### IX.

The third party administrators, Antero, Health Plans, and Mutual of Omaha, are the only defendants to this motion. The non-moving Defendants, Kaiser–Hill and the R–Flex Rocky Flats Flexible Benefits Plan, did not join in this motion to dismiss. Therefore, my ruling is only directed to the third party administrators and, at this juncture, all claims remain viable against the non-moving Defendants.

Accordingly, I ORDER that:

(1) Defendant third party administrators' motion to dismiss the Klovers' claim for breach of contract pursuant to Rule 12(b)(6) is GRANTED;

(2) Defendant third party administrators' motion for summary judgment on the Klovers' claim for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) is GRANTED;

(3) Defendant third party administrators' motion to dismiss the Klovers' claim for equitable relief under 29 U.S.C. § 1132(a)(3) is GRANTED;

(4) Defendant third party administrators' motion for summary judgment on the Klovers' claim under 29 U.S.C. § 1132(a)(3) is DENIED; and

(5) Defendant third party administrators' and Plaintiffs' cross-motions for attorney's fees pursuant to 29 U.S.C. § 1132(g) are DENIED.